**Alvin H. FLORETH and Mary Floreth, his wife, Appellants,**

v.

**STATE HIGHWAY COMMISSION of Missouri et al., Respondents.**

No. 54592.

Supreme Court of Missouri,
Division No. 1.

Nov. 8, 1971.

Almon H. Maus, Monett, for appellants.

Robert L. Hyder, John H. Gladden, Jefferson City, for respondents.

BARDGETT, Judge.

Action for declaratory judgment and injunction. Plaintiffs appeal from a judgment in favor of defendants. The issue is whether certain land is subject to an easement in favor of respondents. Title to real estate is directly involved. We have jurisdiction. Art. V, § 3, Mo.Const.1945, V.A.M.S.

Alvin Floreth and Mary Floreth, his wife, plaintiffs-appellants, are successors in title to one Musselman. In 1934 Musselman deeded an easement over certain land

in Stone County, Missouri, to the State Highway Commission, defendant-respondent, for use as a state highway. This easement widened a then existing public roadway, known as Route F, from approximately 20 feet to 60 feet. The Commission built a state highway on the enlarged strip in 1936 and designated it Supplementary Road SC, and subsequently redesignated it Route 80, 148 and 76. In 1959 the filling of Table Rock Reservoir made a portion of Route 76 impassable, and consequently the Commission built a new section of highway on different land and designated it Route 76. The strip in dispute here is approximately 1300 feet long and extends from what is now Route 76 southeastwardly, terminating at the bank of the James River Arm of Table Rock Reservoir. After the location of Route 76 was changed in 1959, the Commission itself continued to maintain the disputed strip until 1963. In 1963 the Commission entered into a maintenance agreement with defendant-respondent, Cape Fair Special Road District, hereafter called District, whereby the District agreed to maintain this roadway. This maintenance agreement is still in effect. The plaintiffs stipulated that in 1934 this disputed strip was taken into and became part of the state highway system. It was maintained by the state highway department from 1934 to 1963. Prior to 1934 the narrower strip (Route F) and since then, until 1959, the broader strip (SC, 80, 148, 76) was part of the public highway between Cape Fair and Reed Springs, Missouri, and used as such by the public. Since 1959 to the present, the disputed strip serves the property of appellants and respondents Sheltons, and is used by mailmen serving the Sheltons, and by the public generally, and particularly as an access road to the James River Arm of Table Rock Reservoir, and thus still connects two public places— Highway 76 and Table Rock Lake.

The plaintiffs contend that the disputed strip was not being used within the purposes of the Musselman deed because Highway 76 (formerly Route SC) was relocated and/or because the strip is no longer maintained as a state highway. In this connection, plaintiffs maintain that the fact that the Commission ceased maintaining the strip in 1963 in and of itself is determinative of the cause in their favor but also submit that the strip was no longer used for the designated purpose when State Highway 76 was relocated in 1959.

The easement deed executed by Musselman in 1934 to the State is captioned, "Conveyance for State Highway Purposes". Immediately preceding the metes-and-bounds description appears the clause, "Right of Way for Supplementary Road, SC", and following the land description appear the clauses, "Containing right of way old 1.35 acres, more or less * * * new 1.40 acres, more or less". Then follows the habendum which provides, "TO HAVE AND TO HOLD the premises aforesaid for the purpose of constructing and maintaining a State Highway on the said land herein conveyed according to the plans of the State Highway Commission, with all and singular the rights, appurtenances and immunities thereto belonging or in anywise appertaining unto the said party of the Second Part, and unto its successors and assigns forever."

The "Maintenance Agreement" entered into in 1963 between the Commission and the District whereby the Commission contracted with the District to maintain the disputed strip provides in part, "However, because of a desire of Agency [District] to maintain said section of highway to provide service to certain areas, Commission *will retain* said highway so long as Agency, with its own forces or by contract, shall provide reasonable maintenance thereon in a manner similar to other highways maintained by Agency in the area." (Emphasis ours.) The agreement further provides: "In the event said highway is not maintained in an acceptable manner by Agency [District], then Commission may * * * terminate this maintenance agreement and abandon the right-of-way for said highway, so that same may be dis-

posed of by Commission in the manner provided by law."

Appellant Alvin Floreth testified that since 1963 no one kept the trash cleaned up or cut the brush and weeds along the right of way of the disputed strip, nor is it blacktopped. The District did grade the roadway about twice a year. Mr. Floreth said he was familiar with this strip and knew of no time when it was not used by the public, and that mailmen use it six days a week.

A traffic count offered by the Commission was received in evidence covering a period from January 1965 through August 1967 and includes nonrecreational vehicles as well as recreational vehicles. For 1965 it shows a count of 390 for January and increases to 1239 in June, and then decreases to 258 in December. Similar figures are shown for 1966. In 1967 the count was 124 in January increasing to 1048 in June, and down to 1000 in August.

The trial court in entering judgment for defendants and against plaintiffs found that plaintiffs-appellants failed to prove that the disputed strip had been abandoned by the Commission; that it is part of the state highway system; that public funds have been expended on it for the past five years prior to November 21, 1967, and that this roadway has been in continuous, uninterrupted and notorious use by the general public since the date of its construction in 1936.

Appellants contend that the Commission abandoned the use of the easement by relocating Highway 148 (now 76), that the disputed strip has not, since the relocation in 1959, been used and maintained as a state highway, and that said strip has not been a part of the state highway system since the said relocation. In other words, appellants say that the use intended by the grantor Musselman, according to the easement deed, has ceased and, therefore, the fee is no longer encumbered by a highway easement. Appellants admit that from 1936 to

1963 the disputed strip was maintained by the Commission.

At the outset we observe that it is highly questionable, even if plaintiffs were successful in this action, whether the land on which the 20-foot-wide right of way that was in existence prior to the 1934 easement deed, and on which a public road known as old Route F ran, would be relieved of that easement, for it was not in any way dependent on the easement deed of 1934 for its existence and it does not appear to have ever been abandoned or vacated. State ex rel. Carter County v. Lewis, Mo.App., 294 S.W.2d 954, §§ 228.110 and 228.190, V.A.M.S.

Appellants do not assert that there has been an express or statutory vacation or abandonment of the roadway pursuant to §§ 228.110 or 228.190. Neither does there appear to be any contention that the records of the Commission reflect an intent to abandon the easement as was the case in Lloyd v. Garren, Mo., 366 S.W.2d 341, 342. Indeed, the records of the Commission as reflected by the maintenance agreement between the Commission and the District indicate an intent on the part of the Commission not to abandon the easement for the said agreement specifically provides that the Commission will *retain* the disputed section of highway. Furthermore, insofar as the "use" by the public of the disputed strip as a public roadway is concerned, the evidence is clear that the public has continuously so used it, and the trial court so found.

Thus the question here is whether the Commission has the right and authority under the deed and the law to cause the disputed strip to be used as it is at present.

In construing a deed the intent of the grantor is to be determined from the instrument itself, giving effect, if possible, to every part of it. McAlister v. Pritchard, 287 Mo. 494, 230 S.W. 66, 67.

The parties agree that the deed conveyed a right-of-way easement and not the fee.

The deed, entitled "Conveyance for State Highway Purposes", conveyed an easement "for the purpose of constructing and maintaining a State Highway * * * according to the plans of the State Highway Commission". A state highway was constructed and maintained on the easement at the cost of the state according to the plans of the Commission and thus the original immediate object of the grant was fulfilled.

Appellants urge that the use now being made of the disputed strip is not that of a state highway and that the use of the land as a state highway has been made impossible by the relocation of the highway and thus the use as designated in the easement deed has been abandoned by the state.

This court in Holekamp Lumber Co. v. State Highway Commission, Mo., 173 S.W.2d 938, rejected a similar contention by plaintiff Holekamp and held that the relocation of the grade of Highway 30 did not cause an abandonment of the use designated in the easement conveyance, as the use being made of the land was still that of a highway. "State highway" is defined in § 226.010, subd. 7, V.A.M.S., as "a highway constructed * * * at the cost of the state". The roadway in question was constructed at the cost of the state and consequently is a state highway. We do not believe that a roadway loses its status as a state highway merely because it no longer is a through or main highway.

It appears that the thrust of appellants' point here is that the "use" intended by the grantor relates to the reason why a member of the public may use the roadway rather than the "use" of the *land* by the Commission as a roadway.

State ex rel. Carter County v. Lewis, Mo.App., 294 S.W.2d 954, involved a segment of roadway 1866 feet long from Chilton, Missouri, to the bank of the Current River. In earlier times the road forked at the river and ran to two fords where the road crossed the river and continued on. When the road crossed the river, it was used by children to get to school and adults as the only available route to polling places for school and general elections. After the road ended at the river it was used principally by those who went to the Current River for fishing and other recreational purposes and to visit a cemetery. The court held that there may have been an abandonment of that portion of the road beyond the fork but that did not constitute an abandonment of the disputed road from the south edge of Chilton to the river even though the disputed road now has no outlet to the south and ends in a cul-de-sac. Cf. Connell v. Baker, Mo.App., 458 S.W.2d 573; Sterlane v. Fleming, 236 Iowa 480, 18 N.W.2d 159; 39 C.J.S. Highways § 131a, p. 1067. Thus is does not appear that a change in the purpose the road serves causes the road to be any less of a public roadway.

■ We believe that the "use" intended by the grantor relates to what may be put upon the land. Thus if the purpose of the easement is to permit a public roadway to be constructed on the land and if that is what the land is being used for, then the use is within the purpose of the grant. This is so even though the roadway connects different points than it did originally, and consequently the traveler's purpose in using the road is different now than it was before.

In the instant case the land is and has been continuously utilized as a public roadway since at least 1934. This significant fact, among others, distinguishes the cases cited by appellants from this case. In Roanoke Investment Co. v. Kansas City & S. E. R. Co., 108 Mo. 50, 17 S.W. 1000, the railway company never did use the easement for railroad tracks, refused to build a railroad on the land, made no objection to the construction of a racetrack on the easement by another, and built its railroad on different land. Under these facts the court held the railroad abandoned the easement. In City of St. Louis v. Bedal, Mo., 394 S.W.2d 391, this court affirmed the trial court's judgment holding that a diver-

sion of five acres across the middle of Tower Grove Park for a depressed highway would violate certain specific conditions in the deed by which the city received the property and would cause a reversion of the park property. The restrictions expressly limited the use to that of a public park and provided that no portion of the park shall ever be used for any other purpose. The deed then explicitly provided for a reversion should the conditions be breached. Both Schuermann Enterprises, Inc., v. St. Louis County, Mo., 436 S.W.2d 666, and State ex rel. State Highway Commission v. Union Electric Co., 347 Mo. 690, 148 S.W.2d 503, involved railroad right-of-way easements that had been abandoned by reason of the easement holders not using the land for railroad purposes. In Schuermann Enterprises this court said, "Such easement is extinguished when the railroad ceases to run trains over the land * * *." In the instant case the Commission has continuously used the land for a public roadway and the public has continuously driven automobiles over the road.

In Sellers v. Swehla, 364 Mo. 285, 261 S.W.2d 26, cited by appellants, the court held that the order of the county court changing the location of an old road to a new location, which order was entered on landowners' petition therefor, under the circumstances of that case, vacated the old road. In our case there has been no vacation of the old road and consequently Sellers v. Swehla does not apply.

■ The Commission has the right to locate or relocate state highways, Public Water Supply Dist. No. 2 of Jackson County v. State Highway Commission, Mo., 244 S.W.2d 4, 6. Appellants argue that the act of the Commission in "relocating" a highway operates, ipso facto, to extinguish the easement on which the highway ran and cites Lloyd v. Garren, Mo., 366 S.W.2d 341, in support of this position. Lloyd v. Garren did not so hold, for in Lloyd v. Garren, the Commission not only relocated a segment of Highway 67 but

in addition thereto affirmatively abandoned its interest in the old easement.

On rehearing plaintiffs cite and principally rely on City of Rockland v. Johnson, Me., 267 A.2d 382, in support of their contention that the Commission's action in relocating the highway operated to extinguish the old easement. In City of Rockland, supra, the route of a highway was changed and plaintiff city erected fences closing the old route to traffic. Sometime later, we cannot determine how long, the city built a public beach, a recreation area and related structures on that portion of the old route which the city had previously fenced against traffic. The city then sought an injunction against the landowner to restrain him from interfering with the city's use of the old route. The major portion of the court's opinion dealt with the question of whether the city originally held the fee to the road or an easement and concluded that the interest held by the city was an easement and not the fee. The question remaining was whether the city, as the holder of a road easement, could build a beach, swimming and recreation area, and a bath house on the easement. The court held that the only right the city had in the land was a right to the viatic use of the road by the public and that the city's action in establishing bathing facilities and a recreation area including the construction of a bath house *on the discontinued portion of the old route* was without legal right.

Although the court's decision in the City of Rockland case does appear to be based in part on the proposition asserted therein that " 'Establishing an alteration in a highway, is in law a discontinuance of the part altered' ", it is apparent from the opinion that the proposition noted did not form the total basis for the decision. If it had, then the Maine court would not have considered it necessary to discuss the rule that " 'No new servitude, not in the nature of public travel, can be imposed upon the land, against the consent of the landowner, without a further condemnation * * *' ",

for the extinguishment of the easement would have occurred at the time the route was altered and before the additional servitudes consisting of the recreational facilities and the building were put on the easement.

The facts set forth in the City of Rockland opinion demonstrate that the City of Rockland not only altered the route of the highway but additionally *closed the road to traffic and built the structures noted supra on the old route.* The easement was, as the Maine court stated, for "the viatic use of the road by the public". The court held that the establishment of bathing facilities, including the building of a bath house, *on the old route* was without legal right as it imposed an additional servitude on the easement.

In our case the Commission has not fenced or otherwise closed off the strip to public travel nor has it burdened the easement with additional servitude inconsistent with the viatic use of the strip by the public. To the contrary, the Commission has affirmatively evidenced its intent to retain the old highway for public travel and has, by contract, provided for its maintenance.

■ In our view the relocation of a highway by the Commission does not automatically effect an abandonment of the old easement. We hold that the Commission did not abandon the easement granted in the 1934 deed but retained the easement under its jurisdiction as a state highway, and the present use of the land as a public roadway is within the purpose of the easement deed.

■ Although appellants' evidence on maintenance of the highway was to the effect that the brush, weeds and trash had not been cleared off the strip by the District nor was it blacktopped, the appellants' evidence also showed that the District did grade the strip twice a year, and the trial court found that public funds had been expended on the strip for five years prior to the trial of this cause on November 21, 1967. The record supports the trial court's finding and the difference shown in evidence in the quality of maintenance between the time that the strip was the main highway and after the strip only connected Highway 76 to the bank of the James River Arm was not such as to compel a finding that the road had been abandoned or that it was no longer a state highway.

■ Appellants further contend that the Commission did not have the authority to contract with the District, a political subdivision, because Art. IV, § 31, Constitution 1945, was not in effect at the time the easement was granted in 1934. Article IV, § 31 of the Constitution provides in part: "The commission may enter into contracts with cities * * * or other political subdivisions for and concerning the maintenance of, and regulation of traffic on any state highway within such * * * subdivision." While the legality of the conveyance itself is governed by the laws in existence at the time of the conveyance, Frame v. Humphreys, 164 Mo. 336, 64 S. W. 116, 119, we do not believe that the agency entrusted with maintenance of a highway at the time of the conveyance must remain the same forever. We hold the authority granted to the Commission by Art. IV, § 31, Constitution 1945, may be exercised by the Commission with respect to any state highway regardless of when the right of way was acquired, and the exercise of this right by the Commission is not in violation of Art. I, §§ 1 and 10, Constitution 1945, prohibiting the taking of property without due process of law and for a public use without just compensation. Since the Commission had the authority to enter into the maintenance agreement with the District, it follows that appellants' contention that the making of the agreement by the Commission constituted an admission that it abandoned the easement has no merit.

We have considered the cases and authorities cited by plaintiffs on rehearing and find them unpersuasive.

The record · supports the trial court's findings, conclusions and judgment, and the judgment of the trial court is therefore affirmed.

All of the Judges concur.