**BROOME & CONKLING, a partnership, Appellant,**

v.

**CITY OF GLADSTONE, Missouri, Village of Oakwood, Missouri, Respondents.**

**No. KCD 29125.**

Missouri Court of Appeals, Kansas City District.

Aug. 28, 1978.

Jerry Conkling, Kansas City, for appellant.

John C. Dods, James T. Newsom and Allen R. Purvis, Kansas City, for respondents; Shook, Hardy & Bacon, Kansas City, of counsel.

Before WELBORN, Special Judge, Presiding, HIGGINS, Special Judge, and PRITCHARD, J.

PRITCHARD, Judge.

The issue is whether there was an abandonment of a strip 10 feet wide abutting a street and appellant's property so as to vest title in it [appellant sued as a partnership], so

as to entitle it to compensation, pursuant to a contract, for its reasonable value.

Appellant owns property fronting 120 feet along the east side of 6405 North Oak Trafficway in the Village of Oakwood. Immediately to its north is the south line of the City of Gladstone, Missouri, the city limits of which are also the west boundary of appellant's tract (which is to the centerline of old U. S. Highway 169). In 1922, the appellant's predecessors in interest conveyed a strip 30 feet wide to the State of Missouri, which apparently was the east half of the street, thereafter used as old U. S. Highway 169. In 1960, new U. S. Highway 169 was constructed about one mile west of North Oak and the State Highway Commission widened the paved portion of North Oak which resulted in the northbound lane being 12 feet wide. By letter of October 6, 1961, the State Highway Commission notified the Village of Oakwood of the completion of the contract for street widening and that it could proceed with such maintenance work as it deemed necessary at its convenience (calling attention to a previous letter of September 27, 1961, as to these same matters). The letter also recited: "The State Highway Commission at its meeting on October 3, 1961, took official action on the transfer of the maintenance responsibility on this roadway."

Various mesne conveyances of the property adjoining the highway show that the easement of 30 feet for highway purposes was recognized, although its width was sometimes misdescribed as being 38 feet. A 1968 warranty deed to Broome and Conkling, as joint tenants, showed a highway easement over the west 38 feet. Broome and Conkling, in a 1971 deed, revested title in themselves as tenants in common, again noting the easement on the west 38 feet.

About 1973, the City of Gladstone began to acquire right-of-way for widening North Oak Street, and, agreeing with the Village of Oakwood, sought to acquire 35.5 feet to the west of appellant's property, 30 feet of which being included in the 1922 deed of easement. Appellant's claimed compensation for the east 10 feet of the 1922 easement of 30 feet, this claim being in controversy, and the matter was submitted to arbitration. The arbitration award was limited to the 5.5 feet which respondents admit was never included in the 1922 easement, and for which appellant was awarded $18,250.00. Appellant then filed this declaratory judgment action seeking an adjudication that it was entitled to compensation for the east 10 feet of the original easement under its contract with respondents.

The northbound lane of North Oak is 12 feet wide. To its east is a shoulder 8 feet wide, and to the east of that is the strip 10 feet wide here in question. Appellant's basic contention is that this latter strip was abandoned as an easement when the State Highway Commission relocated U. S. Highway 169 in 1961. In this case, there was no agreement between the commission and the City and Village as to maintenance, as was the fact in *Floreth v. State Highway Commission*, 472 S.W.2d 614, 615 (Mo.1971). As to maintenance, however, Harley Hoar, a trustee for the Village, testified: There was no formal ordinance enacted for the acceptance of maintenance by the Village. The maintenance, after the repaving by the commission, was done by necessity. It consisted of rebuilding two culverts, grading the shoulders three times and patching pavement twice in the last 12 years. In return for the City's not lifting their blade on snow removal while going through the Village, the latter does "three of their odd-ends." To Mr. Hoar's knowledge, the State has done no maintenance after the 1961 paving, "We were, we were told that if anything needed to be done it was our responsibility, so we have assumed that responsibility." After 1961, the public has continued to use the roadway, and there has been increased traffic thereon.

In the *Floreth* case, supra, the commission, pursuant to the agreement, retained the roadway, with the proviso that if the Cape Fair Special Road District did not properly maintain it in an acceptable manner, the commission might terminate the maintenance agreement and abandon the

right-of-way. The public had used the roadway, and the trial court found that public funds had been expended on it for 5 years prior to 1967. Appellants' contention there was similar to that of appellant here: the use made of the disputed strip is not that of a state highway, which use has been made impossible by the relocation of the highway and thus the use designated in the easement. The court noted that it rejected a similar contention in *Holekamp Lumber Co. v. State Highway Commission*, 173 S.W.2d 938 (Mo.1943), holding that the relocation of the grade of Highway 30 did not cause an abandonment of the use designated in the easement conveyance, as the use being made of the land was still that of a highway [as here] saying, "We do not believe that a roadway loses its status as a state highway merely because it no longer is a through or main highway." As held in *Floreth*, supra, page 617[1], the purpose of the easement is to permit a public roadway to be put on the land, and since that is what the land is being used for, the use is within the purpose of the grant.

 Appellant argues that because the entire strip, including the 10 feet in dispute, was included in the conveyance under the arbitration agreement (which reserved for future determination appellant's right to compensation), respondents acknowledged appellant's capability to convey the land as being lawfully seized of the strip. Although not specifically presented, the argument seems to pose some kind of estoppel. Assuming, but not deciding, that estoppel would lie against respondent municipal entities, it seems clear that estoppel will not ordinarily lie against the grantee of a conveyance. See the discussion of this rule of law in *White v. Wilks*, 357 S.W.2d 908, 913[8–13] (Mo.1962); 31 C.J.S. Estoppel § 15 p. 302. *Rosenbloom v. Grossman*, 351 S.W.2d 735, 738 (Mo.1961), cited by appellant, had no such issue, but only that of the validity of the establishment of easements by agreement. Here, the respondents have relied merely upon the original grant of the easement, with continuity of use thereunder, to show their rights in the disputed strip. Contrarily, if there was any estoppel

by reason of prior inconsistent conduct, it was against appellant by reason of its exclusion of the easement, as contained in the 1922 grant, in conveyances as late as 1971 as above set forth, thereby recognizing the existent easement without abandonment.

 The trial court did not err in ruling that appellant had not sustained its burden of proof that it has some title in the property for which it is entitled to compensation.

The judgment is affirmed.

All concur.