# ELIZABETH SELLERS PECK ET AL. *v.* BALTIMORE COUNTY, MARYLAND

[No. 1218, September Term, 1977.]

*Decided February 7, 1979.*

The cause was argued before MORTON, MOORE and COUCH, JJ.

*William A. Hylton, Jr.,* for appellants.

*Peter Max Zimmerman, Assistant County Solicitor for Baltimore County,* with whom were *J. Carroll Holzer, County*

*Solicitor,* and *Theodore J. Potthast, Jr., Chief Assistant County Solicitor,* on the brief, for appellee.

MOORE, J., delivered the opinion of the Court.

This is an appeal in a condemnation suit filed by Baltimore County in connection with the widening and relocation of Bosley Avenue and the creation of a bypass of Towson, the County seat. The case was decided by the Circuit Court for Baltimore County (Land, J.) upon motions for summary judgment wherein the County contended that the property in question, being part of the roadbed of Baltimore Avenue between Susquehanna Avenue and Towsontowne Boulevard, had a nominal value of $1.00 as a matter of law; and the heirs of one Washington Townsend, the appellants herein, argued that although the property had been used as a right of way, such use had been abandoned prior to the condemnation proceedings, thereby releasing any encumbering easement for right of way purposes, and the land should be valued as an unencumbered fee simple interest. A formal appraisal submitted on their behalf estimated the fair market value of their interest at $118,750.

By Memorandum and Order, the trial court denied the motion of the heirs and granted the motion of the condemning authority, holding that the easement had not been abandoned and that the fee interest subject to condemnation should be valued as impressed by the easement. The court thereupon entered an Inquisition awarding the heirs the sum of $1.00. We find no error and affirm.

# I

Appellants' intestate, one Washington Townsend, acquired a large parcel of land in the vicinity of the Baltimore County Court House in Towson, Maryland on March 4, 1862. The property was thereafter subdivided and Mr. Townsend conveyed lots using descriptions that bounded on the edges of certain roads, including Baltimore Avenue, which he had laid out in the course of subdividing. The particular property subject to these condemnation proceedings formed a bed for

the roadway of Baltimore Avenue. The court below held that title to the roadbed was retained by Townsend, subject of course to an easement for road purposes, and remains in his heirs.[1]

In June 1973, Baltimore County entered into a federal-state program of highway improvement in the Towson area. This program involved, in part, the relocation of Bosley Avenue and the creation of the Towson bypass. Bosley Avenue, Susquehanna Avenue, and Baltimore Avenue in the area of Towsontowne Boulevard were redesigned. A part of Baltimore Avenue was discontinued, landscaped, and became a portion of a "mini-park." The latter portion of Baltimore Avenue was 60 feet wide, aggregating approximately 9,500 square feet, and is the subject of this controversy. The remaining portion of Baltimore Avenue was realigned and continued in vehicular use as part of redesigned Bosley Avenue. Thus, a part of Baltimore Avenue continued to be used as a roadbed. The two portions of the road consisted of a total of 28,563 square feet or .0656 acres.

The County's petition for condemnation, filed on July 7, 1975, sought to acquire the fee in both portions of the roadbed, and the petition for condemnation, as amended, alleged that the property was required "for the purpose of landscaping of a mini-park on a portion of the parcel and to improve highway design for traffic flow on the remainder of the parcel, which will continue to serve as a public road as part of Baltimore Avenue, Bosley Avenue and the public road serving the Baltimore County Jail." As previously indicated, only the 9,500 square feet condemned for the mini-park are involved in this appeal.

---

1. At oral argument, this Court, *sua sponte,* raised the issue of whether title to the bed of Baltimore Avenue had been properly held to reside in the heirs of Washington Townsend, appellants herein. In a *per curiam* opinion (unreported) filed on June 27, 1978, No. 1218, Sept. Term, 1977, we remanded the cause, without affirmance or reversal, for a redetermination of that issue in accordance with our opinion. *See* Laws of Md., ch. 684 (1892), the substance of which is now embodied in Md. [Real Prop.] Code Ann. § 2-114 (1974). On remand, in an opinion filed on November 6, 1978, the court ruled upon the basis of deeds executed by Townsend in 1867, that it was the "intent [of] the grantor [Townsend] to retain title [in himself] to the roadbed [of Baltimore Avenue]" and that "title [to] the property to be condemned remain[s] in the heirs of Washington Townsend." This determination is not challenged by Baltimore County.

An appraiser was appointed to value the property in the petition and a "prior entry appraisal" was duly filed on July 29, 1975 showing an appraisal in the amount of $1.00. The "comments" of the appraiser, Bernard F. Semon, were as follows:

> "This estimate of value is quite unique in that the subject property under appraisement represents a portion of the bed and adjoining sidewalk area of the existing Baltimore Avenue in the heart of Towson. After a careful review of this situation and reading the Court's decision in the case of *King v. Mayor and Council of Rockville* [249 Md. 243, 238 A. 2d 898 (1968)], it is your appraiser's opinion that a similarity exists and, therefore, the Unknown Heirs of Washington Townsend are entitled to a nominal value as just compensation for the proposed acquisition. A nominal value in your appraiser's opinion is estimated to be $1.00."

Subsequently, in answers to interrogatories, the appellants submitted a formal appraisal by William H. Baldwin, Sr., who estimated the fair market value of the 9,500 square feet of land at $12.50 per square foot or a total of $118,750.

The undisputed facts in the record before the lower court in its consideration of the respective motions for summary judgment included the following: 1) the actual entry for work preceded the filing of the petition for condemnation; 2) there was never any statutory road closing; 3) appellants never paid any taxes on the land and never acted in reliance on the actions of the County nor entered upon or used the land; and 4) the County has continued to use subsurface easements for sewers.

The lower court, in a comprehensive memorandum which accompanied an order granting the County's motion for summary judgment, stated in part:

> "The Court has carefully and fully considered the affidavits and exhibits filed by the parties. There can be no doubt that there does not exist a material

dispute of fact. *It is clear that Baltimore County never intended to abandon the use of the property in question for its highway purposes. It is also clear, beyond question, the use of a portion of the property for a 'mini-park' and pedestrian thoroughfare is clearly incidental to the traffic control upon the adjacent highway.*" (Emphasis added.)

## II

Appellants contend that the parcel involved must be valued without regard to the prior easement because at the date of the taking the easement had been abandoned by the rerouting of the roadway. The intent to abandon is essential to a finding of abandonment and intent is a question of fact. *Ayres v. Hellen,* 235 Md. 258, 260-61, 201 A. 2d 509, 510-11 (1964); *Millson v. Laughlin,* 217 Md. 576, 588-89, 142 A. 2d 810, 817 (1958); 3 Tiffany, *Law of Real Property* § 825 (3d ed. 1939). In the instant case, motions for summary judgment were filed by both sides, and appellants, although alleging error in the denial of their motion, concede in brief that the issues may have been determined appropriately on summary judgment, since no genuine dispute as to a material fact existed. Md. Rule 610 (a). We are in agreement with Judge Land's holding that Baltimore County "never intended to abandon the use of the property in question for its highway purposes." The entry of an Inquisition awarding appellants nominal damages only was proper.

In a condemnation proceeding, damages are awarded "as of the date of the taking, if taking has occurred, or as of the date of trial, if taking has not occurred." Md. [Real Prop.] Code Ann. § 12-103 (1974); *Big Pool Holstein Farms, Inc. v. State Roads Commission,* 245 Md. 108, 113, 225 A. 2d 283, 285 (1967). If the condemned property is subject to an existing easement in the public for highway purposes at the time of taking, it has been said to have no substantial value and only nominal damages will be awarded. *United States v. Certain Parcels of Land Situated in Fairfield,* 54 F. Supp. 667, 669 (D. Md. 1944); *King v. Mayor of Rockville,* 249 Md. 243, 251, 238

A. 2d 898, 903 (1968); *Moale v. Mayor of Baltimore,* 5 Md. 314, 323 (1854); *see* 5 *Nichols on Eminent Domain* § 16.101 [4] (3d ed. 1975); 29A C.J.S. *Eminent Domain* § 157(2)(a) (1965); Annot., 17 A.L.R. 1249 (1922).

In determining whether the lower court correctly found that appellants' property continued to be burdened by a highway easement at the time of taking, we look to well-recognized principles regarding the requirement for abandonment of such a servitude. It is stated in 2 *American Law of Property* § 8.97 (1952 & Supp. 1962), that "[t]o produce an abandonment of an easement there must be action respecting the use authorized by the easement which indicates an intention never to make the use again." *Accord, D. C. Transit System, Inc. v. State Roads Commission,* 265 Md. 622, 625-27, 290 A. 2d 807, 810-12 (1972). With respect to abandonment of an easement held by the public for highway purposes, a presumption in favor of the continuance of the easement has generally been held to attach, and "the burden is on the one who asserts abandonment to prove it by clear and satisfactory evidence." 39A C.J.S. *Highways* § 130 (1976). *See Ayres v. Hellen,* 235 Md. at 261, 201 A. 2d at 510. An often mentioned maxim of the common law, "once a highway, always a highway," reflects this presumption but, as stated in 3 Tiffany, *Law of Real Property, supra* at § 929, it is technically obsolete, as "a highway may cease to exist through any one of several causes." [2]

The relocation of a highway is an example of a situation where an easement in a public highway may cease. Relocation will not, however, automatically effect abandonment of the easement in the old route. *Floreth v. State Highway Commission,* 472 S.W.2d 614, 619 (Mo. 1971); 39A C.J.S. *Highways* § 130 (1976). Rather, there must be an intention

---

[2]. It is stated on this question in Annot., 158 A.L.R. 543, 545 (1945):

"The ancient legal parrotism 'once a highway always a highway' is . . . inappropriate in cases where a legal change is shown. That maxim, if it ever acquired that dignity, is appropriate to decisions negativing the loss of the public rights by the neglect of officials, by nonusers, or by the encroachment of individuals. The occasional resort to cliches of this sort in cases of the type here considered is unfortunate."

on the part of public authorities that "the new way be wholly substituted for the old." 39 Am.Jur.2d *Highways, Streets, and Bridges* § 154 (1968). Case law, therefore, which speaks of an "implication" of abandonment resulting from the replacement of an old highway by a new road must necessarily be viewed in terms of the intentions of the road closing authorities. *See* Annot., 158 A.L.R. 543 (1945).

Perhaps because the intent to abandon presents issues of fact, some lack of consistency is apparent in the cases. As stated in 2 Elliott, *Law of Roads and Streets* § 1176 (3d ed. 1911), an early treatise:

> "It is not easy to reconcile all of the decisions upon the question of abandonment. . . . Sometimes there are decisions on each side of the line in the same jurisdiction and so close to the line that it takes very careful discrimination to distinguish them."

Appellants argue that two Maryland cases involving relocation and simultaneous road closing are controlling under the instant facts. In *Jenkins v. Riggs,* 100 Md. 427, 59 A. 758 (1905), it was held that a statutory road closing proceeding resulted in the abandonment by Baltimore County of a particular highway, and injunctive relief to prevent the closing was unavailable. The court noted, however, in apparent dictum:

> "It has been repeatedly decided that an alteration by competent authority of an existing road or way operates as a discontinuance of such portions of the old road as are not embraced within the limits fixed for the new one even if no formal or special order of closing or discontinuance is passed." (Citations omitted.)

100 Md. at 438, 59 A. at 762. The *Jenkins* case was cited for this proposition in *Libertini v. Schroeder,* 149 Md. 484, 132 A. 64 (1926), where a nonstatutory road closing was involved. The Court there held that "[t]he alteration of the location of the turnpike road was made by competent authority, and it operated as a discontinuance of that section of the turnpike which was thus abandoned." 149 Md. at 494, 132 A. at 68.

We do not believe that the above cases are determinative of the abandonment issue here. In *Jenkins* and *Libertini,* there was an *express intention* by public authorities to abandon the old roads, and the new roads served as complete substitutes for them. No further public use was made of the original highways. An interpretation of the cases as implying "automatic" discontinuance of the public's interest in the old roads extends too far. A more realistic approach is stated in dictum in *Cooper v. Sanford Land Co.,* 224 Md. 263, 167 A. 2d 602 (1961). There, the Court of Appeals noted the principles governing abandonment of a public road:

> "This Court has held that two elements are necessary to show an abandonment, namely, an intention to abandon, and an overt act, or an omission to act, by which such intention is carried into effect; and mere nonuser, of itself, is not any evidence of abandonment, unless it continues for the period of limitations of actions to recover the right or property."

224 Md. at 266-67, 167 A. 2d at 604.

The County, on the other hand, is misguided in its view of the requirements for abandonment of a public road. It relies primarily upon *Mayor of Baltimore v. Chesapeake Marine Railway Co.,* 233 Md. 559, 197 A. 2d 821 (1964) for the proposition that abandonment can occur only when the statutory period has elapsed for the acquisition of prescriptive rights in third parties. The relevant language in the opinion of the Court is as follows:

> "The Maryland cases have held, we think, no more than that a private claimant to an easement in a public street, who had title to the fee of the bed of the street may acquire ownership of the easement by what in effect is equitable prescription if he shows an abandonment by the municipality of the easement for at least as long as the period necessary to obtain title at law by adverse possession."

233 Md. at 576, 197 A. 2d at 829. This decision speaks,

however, only to the question of abandonment by nonuser. Where abandonment is evidenced by both *intention* and an *overt act,* there is no doubt but that the statutory period need not elapse for the highway easement to be lost. *See D. C. Transit System, Inc. v. State Roads Commission,* 265 Md. at 625-27, 290 A. 2d at 810; *Cooper v. Sanford Land Co.,* 224 Md. at 266-67, 167 A. 2d at 604.

More directly pertinent to the factual pattern before us are *City of Rockland v. Johnson,* 267 A. 2d 382 (Me. 1970) and *People v. Vallejos,* 59 Cal. Rptr. 450 (Ct. App. 1967). In *Johnson,* city officials changed the location of old State Highway #17, running through appellants' property, so that a small portion was no longer used as a highway. The city then erected fences around the discontinued section of the road and built a public beach which included a swimming and recreation area and bathhouse. Appellants interfered with the operation of the area and the trial court granted the city injunctive relief, finding that no abandonment of any part of the old highway occurred because the property was still devoted to a public use. The Court of Appeals reversed, finding that the city had never acquired a fee interest in the highway, and that its easement extended only to "the viatic use of the road by the public." 267 A. 2d at 385. It was further held that "[w]hen that part of old Route #17 ... was discontinued as a through highway and was relocated, there resulted an abandonment," the effect of which was to discharge the prior encumbrance. *Id.*

*People v. Vallejos* was an appeal from a condemnation award of $2500 in favor of certain parties owning property abutting a highway. Prior to condemnation, the County of Los Angeles had a street easement in the roadway; proceedings were initiated so that the road could be transferred to the State for use as a drainage channel in connection with a new freeway system. The California court held that the statutory method of abandonment was exclusive,[3] and that this had not been followed. An alternative statutory procedure whereby the County and State could enter into an agreement for the

---

3. This is not the law in Maryland. *See* Libertini v. Schroeder, 149 Md. 484, 132 A. 64 (1926).

closing of a street did not here result in abandonment of the easement, the court holding:

> "The street, although converted to the use of the freeway system, is still being used for highway purposes. There has been constructed on the south half of Choisser Street a curving freeway off-ramp. On the north half, to which appellants own the underlying fee, there is the drainage channel. *The drainage channel is part of the highway system, no less than is the ramp.... Drainage of water is an integral part of a highway system.*" (Citations omitted; emphasis added.)

59 Cal. Rptr. at 453. Nominal damages only were permitted for condemnation of the property since the drainage channel was within the scope of the original highway easement.

Also noteworthy is the decision in *Floreth v. State Highway Commission,* 472 S.W.2d 614 (Mo. 1971). Relocation of a highway was similarly involved and, following the construction of the new road, the old highway was used by mailmen and as an access road to a reservoir, both of which purposes were not among the original uses of the road. The Missouri court distinguished *City of Rockland v. Johnson,* 267 A. 2d 382, finding in that case that no "viatic" use of the old highway remained. Abandonment was not held to have occurred under the facts of *Floreth:*

> "In our view the relocation of a highway by the Commission does not automatically effect an abandonment of the old easement. We hold that the [State Highway] Commission did not abandon the easement granted ... but retained the easement under its jurisdiction as a state highway, and the present use of the land as a public roadway is within the purpose of the easement deed."

472 S.W.2d at 619.

A general rule may be discerned from the decisions in the *Johnson, Vallejos,* and *Floreth* cases to the effect that abandonment of a highway easement occurs where the new

use of the former roadway is "nonviatic," *i.e.,* unrelated to the original highway use for which the easement existed. Where, however, the new use exhibits some practical relationship to the relocated highway, and is not completely independent thereof, the easement will not have been abandoned.

Baltimore County argues that the construction of the mini-park on the condemned section of Baltimore Avenue not now used as a highway did not exceed the bounds of the highway easement, and that abandonment did not occur. We agree with Judge Land's decision below that "the use of a portion of the property for a 'mini-park' and pedestrian thoroughfare is clearly incidental to the traffic control upon the adjacent highway," and that there was never any intention on the part of the County to abandon any part of Baltimore Avenue. Indeed, the use of the land may still be considered "viatic," as it serves a functional purpose related to the operation of the new roadway.

In support of this conclusion, we note that the County's motion for summary judgment was accompanied by a number of affidavits from County officials. One affiant, Oscar M. Keys, Jr., a federal aid liaison engineer with the Baltimore County Department of Public Works, declared as follows:

> "[The] mini-park was designed as part of a federal aid highway project pursuant to [a] contract involving the Federal Highway Administration, and the State Highway Administration, as well as Baltimore County. *The park assists in traffic control and channelization and serves also as a pedestrian thoroughfare and was intended for this public use and need."* (Emphasis added.)

Another affidavit by Edward Helinski, Jr., a project engineer with the Bureau of Engineering, stated that *"[t]he landscaping was incidental to highway construction and serves also as a pedestrian thoroughfare. . . .* The above has transpired in connection with the improvement and relocation of Bosley Avenue as part of a federal aid highway project

related to a new Towson bypass." (Emphasis added.) These averments were uncontroverted by appellants.

We would further observe that the definition of "highway," as used in the Maryland Code, is extremely broad, and comports with the conclusion that the mini-park construction was not outside the scope of an easement for highway purposes. In Md. [Transp.] Code Ann. § 8-101 (h) (1977), it is stated that a highway includes:

> "(1) Rights-of-way, roadway surfaces, roadway subgrades, shoulders, median dividers, drainage facilities and structures, roadway cuts, roadway fills, guardrails, bridges, highway grade separation structures, railroad grade separations, tunnels, overpasses, underpasses, interchanges, entrance plazas, approaches, and other structures forming an integral part of a street, road, or highway, including bicycle and walking paths; and
>
> (2) *Any other property acquired for the construction, operation, or use of the highway.*" (Emphasis added.)

In our view, the facts of this case are very far from indicating an intention on the part of Baltimore County to abandon its highway easement over any portion of Baltimore Avenue. The mini-park property was necessarily "acquired for the construction, operation, or use of the highway," and is therefore within the scope of the highway easement. At the time of the "taking," regardless of whether construction of the mini-park had yet begun, the property was subject to an existing highway easement. This was at no time abandoned by the County. Nominal damages were properly awarded in the condemnation proceedings below.

> *Inquisition affirmed; appellants to pay the costs.*