Ray REINHOLD, et al.,
Plaintiffs-Appellants,

v.

FEE FEE TRUNK SEWER, INC., et al.,
Defendants-Respondents.

No. 46121.

Missouri Court of Appeals,
Eastern District,
Division Five.

Jan. 10, 1984.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
Feb. 17, 1984.

Application to Transfer Denied
March 20, 1984.

600

Brian A. Bild, St. Louis, for plaintiffs-appellants.

David L. Welsh, St. Louis, for defendant-respondent Fee Fee Trunk Sewer.

Donald J. Stohr, James W. Erwin, St. Louis, for Metropolitan Sewer Dist.

Richard J. Sheehan, St. Louis, for defendants-respondents.

HAROLD L. LOWENSTEIN, Special Judge.

Plaintiffs, who are owners and managers of real property, appeal the dismissal of their petition for a class action seeking to recover certain assets, "contributions in aid of construction," totaling $1 million paid by them to a privately owned utility, Fee Fee Trunk Sewer, Inc., (Fee Fee) when Fee Fee sold its assets to the Metropolitan St. Louis Sewer District (M.S.D.), a municipal corporation. M.S.D. continued to provide existing sewer service. These contributions arise when a housing developer puts in sewers, deeds them to the sewer company without charge, but then recoups the cost from an increased price for the home, or when a sewer company makes a connection charge in return for building a sewer to service the property.

The second amended petition, which was dismissed as to all defendants, contained the following:

Plaintiffs are members of Board of Managers of two condominiums that were served by Fee Fee. They sought class certification.

The defendants are Fee Fee, a Missouri corporation providing sewer service, individuals who comprised the last board and were shareholders of Fee Fee, and M.S.D., a municipal corporation that bought out Fee Fee.

The contributions (in excess of $1 million) in aid of construction were donated by real property owners in St. Louis County for their beneficial interest in the defendant Fee Fee providing them sewer service.

On April 27, 1977 a contract was made for sale of Fee Fee to M.S.D. for $12 million, effective December 31, 1977. $10 million of the purchase price came from M.S.D.'s sale of revenue bonds, and plaintiffs' payment of a surcharge on their bills to pay for the bonds in contravention of Section 393.130 RSMo 1978.[1]

The prayer was for a constructive trust of $11 million as to the contributions in aid of construction, an action in equity for damages of $11 million, and for an equitable lien of $10 million on after-acquired assets.

Other facts seem in order. Fee Fee, though privately owned, was subject to the jurisdiction of the Public Service Commission (PSC) for its sewer service to St. Louis County. Therefore the terms of the sale by Fee Fee had to be approved by the PSC. The PSC approved the sale and the terms of the contract. Further, the voters in the area served by Fee Fee in an election approved the annexation of the area by M.S.D. and the issuance of revenue bonds to be paid by a surcharge from themselves as customers to finance the purchase.

The original petition in this case was filed only against defendant Fee Fee. After certification as a class action under Rule 52.08, amended petitions were filed adding M.S.D. and the individual shareholders and last directors of Fee Fee as defendants. The motions to dismiss as to all the defendants was sustained.

The plaintiffs' five points on appeal and twenty-two sub-points form a collage of diverse and fragmented matters. They primarily claim the trial court lacked the power to dismiss and thus erred in dismissing their petition since it did state a claim. Their other points deal with a statute of limitations issue, whether the petition had

1. All statutory references are to the Revised Statutes of Missouri 1978.

been properly amended, and the existence of a fiduciary relationship. All plaintiffs' points are denied and the trial court's dismissal is affirmed as to all defendants.

I.

Plaintiffs, in their first point on appeal, relate several procedural defects which, they argue, nullify the trial court's dismissal of the action. In the first sub-point, the plaintiffs argue that the trial court erred in sustaining defendant Fee Fee's Motion to Dismiss because it was bound by the decision of the court of appeals in *Fee Fee Trunk Sewer, Inc. v. Litz,* 596 S.W.2d 466 (Mo.App.1980). This prior determination, they assert, held that the appellants had set forth a proper cause of action against Fee Fee.

■ This point is without merit. It is true that the law as applied to the facts in an appellate opinion constitutes the "law of the case." On remand to the trial court, however, matters which were not decided by the appellate court are not within the operation of this rule. *State ex rel. Mercantile National Bank at Dallas v. Rooney,* 402 S.W.2d 354, 361 (Mo. banc 1966). *Cf. Brooks v. Kunz,* 637 S.W.2d 135, 138 (Mo. App.1982) (the appellate decision is the law of the case on all points *presented* and *decided*). In *State ex rel. Fee Fee Trunk Sewer, Inc. v. Litz, supra,* the issue of whether or not the plaintiffs stated a proper cause of action against Fee Fee was never addressed or decided. This was a writ matter limited to the question of whether or not the plaintiffs would be forced to exhaust administrative remedies before bringing any court action *Id.* at 468. The doctrine of the "law of the case" did not act to prohibit the trial court from sustaining Fee Fee's present motion.

■ Continuing their theme of the law of the case, the plaintiffs in their second sub-point argue that since one trial judge had certified the class, a successor judge could not entertain a motion to dismiss. It is true that a successor judge is without power to render a judgment, without stipulation of the parties, on testimony heard by his predecessor. *Smith v. Smith,* 558 S.W.2d 785, 790 (Mo.App.1977). Their argument fails because the testimony and evidence on certification heard on a Rule 52.-08(b)(3) class is only to determine, among other things, common questions of law or fact and whether a class action is superior to other methods of adjudication. The merits of plaintiffs' claims were not heard in the certification hearing. The certification itself is not chipped in stone, and, as any certification order, "may be altered or amended before decision on the merits." Rule 52.08(c)(1).

■ The other sub points denominated "C", "D", and "E" under Point I in the amended points relied on and argument of the plaintiffs' brief are without merit. Point "C" is but a restatement of the two points just addressed. The citations of authority are not germane and tantamount to being "naked of citations." *Bishop v. Bishop,* 618 S.W.2d 261, 263 (Mo.App.1981) Rule 84.04(d). Likewise point "D" which states "that one trial judge hear all litigation relating to complex class action[s]" is required under Due Process, is but a reargument of the first two sub-points and misses the mark on the effect of class certification. It does not recognize that certification as a class action does not insulate the petition from later dismissal for failure to state a claim, *Kahan v. Rosenstiel,* 424 F.2d 161, 169 (3rd Cir.1970) *cert. denied* sub nom., *Fertig v. Blue Cross of Iowa,* 68 F.R.D. 53, 57 (D.C.Iowa 1974). Sub-point "E" contains no citation of authority, and no explanation is given as to the point being of first impression. It too is denied. Rule 84.04(d). *Bishop v. Bishop, supra.*

II.

■ In reviewing the allegations of a petition dismissed for failure to state a cause of action, the appellate court, after construing all averments favorably to the plaintiff, must determine whether the averments invoke principles of substantive law upon which relief can be granted. *Shapiro v. Columbia Union National Bank & Trust*

Co., 576 S.W.2d 310, 312 (Mo. banc 1978); *Concerned Parents v. Caruthersville Sch. D.*, 548 S.W.2d 554, 558 (Mo. banc 1977). A motion to dismiss for failure to state a cause of action is well taken where the petition fails to plead the essential facts for a recovery. *Young v. Lucas Construction Co.*, 454 S.W.2d 638 (Mo.App.1970). In arguing that their petition does indeed state a cause of action, the plaintiffs rely on two separate principles of substantive law—first, under the equitable concept of "bilateral fairness" and second, under the auspices of Section 393.130(1). The plaintiffs are not entitled to relief under either principle, and the trial court's order dismissing the action is affirmed.

The plaintiffs argue that the equitable principle of "bilateral fairness" prohibits a privately-owned utility and its shareholders from receiving a monetary benefit for those assets contributed by the ratepayers. The concept of bilateral fairness, their argument goes, allows a utility to receive a return only on its own investment, and not on the investment of its customers—thus, the return derived from the sale of the "contributions in aid of construction" should inure to the benefit of the ratepayers.

In support of this position, the plaintiffs cite several cases in which courts have held that "contributions in aid of construction" may not be included in determining the "rate base" for ratemaking purposes. *State ex rel. Martigney Creek Sewer Co. v. Public Service Commission*, 537 S.W.2d 388 (Mo. banc 1976); *State ex rel. Valley Sewage Co. v. Public Service Commission*, 515 S.W.2d 845 (Mo.App.1974). These cases do not help the plaintiffs. Both are authority only for the proposition that a utility may not have these contributed assets considered toward justifying a *rate* increase to customers. The courts hold to do so would result in two inherent inequities: first, to allow the utilities to include these "contributions" in the rate base is to ask the utility customers to pay twice for the same thing. *State ex rel. Martigney v. Public Service Commission, supra*, at p. 394; second, it allows the utili-

ty's shareholders to receive a return on money which they never invested. *State ex rel. Valley Sewage Co. v. Public Service Commission, supra*, at p. 851.

The plaintiffs cite no authority for the proposition that they are entitled to share in the proceeds received from the *sale* of "contributions in aid of construction" where the purchasing company continues service to the property owners.

Even more damaging to the plaintiffs' position is their failure to plead any facts that show them to have any right, title or *property* interest in these amounts for which they claim they should be paid. *Cf. Broome & Conkling v. City of Gladstone*, 570 S.W.2d 801, 803 (Mo.App.1978). They say in their petition that Fee Fee "received legal title to assets as contributions in aid of construction." Their own petition limits them to claiming an equitable interest in these contributions, but they present no facts that would give rise to their ever getting legal title. As our Supreme Court has noted, an equitable title is the right in the party to whom such title belongs to have the legal title transferred to him upon the performance of a specified condition. *State ex rel. City of St. Louis v. Baumann*, 153 S.W.2d 31, 348 Mo. 164 (1941).

In order to have a right to the proceeds from the sale of the "contributions in aid of construction," the ratepayers would have to show that legal title in such "contributions" would revert to them upon the occurrence of some specified condition. A sale of Fee Fee to M.S.D. as supplying the occurrence of this necessary condition has no roots in any contract or document.

The plaintiffs ask the court as a matter of equitable relief, to create a cause of action for them where none exists as a matter of law. This cannot be done.

In a case analogous to the one at bar, the Missouri Supreme Court has held that equity will not interfere with a "windfall" reaped by a public utility in a non-ratemaking setting. In *Straube v. Bowling Green Gas Co.*, 360 Mo. 132, 227 S.W.2d 666 (1950),

customers of a public utility brought an action against the utility to recover an interest in certain funds received by the utility. The plaintiffs' theory of unjust enrichment was based on these facts: that the utility was paying a fixed rate for gas purchased from a pipeline company and was selling the gas to customers at a rate fixed and approved by the Missouri Public Service Commission; that the utility was prohibited by "law" (now Section 393.130) from collecting any money in excess of the established rate; and that thereafter the utility received a court-ordered refund in the cost of gas and held it under a claim of right. Although the plaintiffs in *Straube* claimed that the refund would be proceeds in excess of the rate fixed by the P.S.C., the court denied their claim, noting that the law of this state provides only for the fixing of rates and does not fix the maximum return allowed. *Straube, supra,* at p. 666. Reiterating the rule stated earlier, the supreme court noted that where rights are clearly defined and established by law, equity has no power to "change" or "unsettle" those rights. *Straube, supra,* at p. 671.

Next asserted by the plaintiffs is that Section 393.130(1) and (3) provide statutory authority for their cause of action. Under the terms of Section 393.130(1), "all charges made or demanded by any such gas corporation, electrical corporation, water corporation or sewer corporation for gas, electricity, water, sewer or any service rendered or to be rendered shall be just and reasonable and not more than allowed by law or by order or decision of the commission." The plaintiffs, citing only to Webster's Dictionary, argue that the proceeds received by Fee Fee and its shareholders represent an "unreasonable charge" in violation of the statute. No other authority is provided.

▉▉▉ The purpose of the Public Service Commission Law, Sections 386 through 394, RSMo 1978, is to secure equality in service in *rates* for all who need or desire these services and who are similarly situated. *May Department Stores Co. v. Union Electric Light and Power Co.,* 341 Mo. 299, 107 S.W.2d 41, 49 (1937). The plaintiffs,

however, seem to confuse the terms "rate" and "return". It is clear that Section 393.-130, just as its predecessor (see Section 5645, RSMo (1939)), is not concerned with the return which a utility receives on the sale of its assets:

"[T]he law of the state only provides for the fixing of rates and does not fix the maximum return thereunder." *Straube, supra,* at p. 671.

Section 393.130(3) reads that no sewer company shall grant any unreasonable preference to any person or particular locality, nor subject them to any prejudice. The plaintiffs cite no authority that this portion of the law nor (1) above create a private cause of action for customers when one operating sewer company sells to another.

The other two sub-points are now mentioned. In one the plaintiffs present a two sentence explanation of the law of the remedy of constructive trusts. They do not advance any theory for the grant of such a remedy. *See Vigran v. Poelker,* 433 F.Supp. 168, 171 (D.C.Mo.1977). Their other sub-point states the liberal standard by which a motion to dismiss is reviewed, and that they feel their petition was sufficient. These points are denied.

Plaintiffs' other points and sub-points do not constitute substantive principles of law upon which relief can be granted and the disposition of the first two points makes them academic. Therefore no extended discussion will be made as to the point dealing with statute of limitations questions as applying to the individual defendants, the method of corporate liquidation, the liability after liquidation of shareholders and directors, or the point dealing with whether or not the plaintiffs properly amended their petition, or the point concerning M.S.D.'s dismissal predicated upon the plaintiffs' motion that M.S.D. took the property after sale in a fiduciary position as to plaintiffs under Section 456.250. They are denied.

▉▉▉ In sum, what the plaintiffs attempt to stop is the shareholders of Fee Fee getting a large sum of money for selling stock, mainly backed by the assets in question,

donated by the plaintiffs and other subscribers to the sewer service. There is no such cause of action under the statutes or case law on this type of utility transaction. Their individual rates for service cannot be predicated on these contributed assets as shown by the cases. They have no property interests to be upheld where the contributions have been deeded to the sewer company. The bonds issued to pay for the sale were approved by the voters, property owners, and the PSC. No relief was sought from the PSC order. The motions to dismiss were properly sustained.

The judgment is affirmed.

All concur.

KAROHL, P.J., and MICHAEL J. HART, Special Judge, concur.