# CITY OF ST. JOSEPH v. ST. JOSEPH TERMINAL RAILROAD COMPANY, Appellant.

**In Banc, June 2, 1916.**

1. **EQUITABLE ESTOPPEL: Application to Municipalities.** Courts apply with much caution the doctrine of equitable estoppel to municipal corporations in matters pertaining to their governmental functions; but it will be so applied when to refuse to do so would result in the destruction of valuable private property and would in the strictest and strongest sense be inequitable.

   *Held*, by BOND, J., that a city has no power to part with the title to its streets except by valid vacation; and that no estoppel of any kind can ever arise in any case where the city undertakes to do an act in violation of the general law or of its charter, for such an act would be in a strict sense *ultra vires* and therefore could not be the basis of estoppel.

2. ———: ———: **Terminal Railroad Yards: Abandoned Streets.** A certain street is shown by a plat recorded in 1858, but was then unusable, and at no time was improved. In 1887 the city by ordinance vacated parts of neighboring streets, but did not vacate the part of this street, now in suit. One section of the ordinance reserved to the city the right to take possession of and reopen the said streets in case the defendant terminal railroad company failed to construct and operate a roundhouse and machine shops upon said streets and the grounds adjoining within six months, and a part of the adjoining ground was that part of the street in suit. The city at no time made any effort to improve the streets for public use, and soon after the ordinance was passed the company constructed and now owns and operates roundhouses and machine shops of the value of more than a half million dollars, which would be destroyed if the city is permitted to oust the company from the part of the street sued for by the city. The city was at all times fully advised of the improvements, and made no objection, and the fact that the part of the platted street sued for was not included in the vacating ordinance can be accounted for only on the theory that both the city and the company proceeded in the belief that it had been disowned and abandoned by the city. Since the improvements have been made the property has been mortgaged to secure bonds, which have passed into the hands of innocent persons, and to permit the city to recover would be

to destroy that security. *Held,* that the rule of equitable estoppel is a complete bar to a recovery in ejectment by the city.

*Held,* by BOND, J., dissenting, with whom WALKER, J., concurs, that, as the city at no time attempted to vacate the portion of the street occupied by defendant company and at no time gave defendant any color of right to cross it with its tracks, and as the city, on the contrary, treated it as a public street by running sewers and water pipes underneath it and exempting it from benefit assessments therefor, and as the defendant did not rely upon any affirmative act of the city, the city is not barred by estoppel *in pais* from asserting title to the property.

Appeal from Buchanan Circuit Court.—*Hon. William D. Rusk,* Judge.

REVERSED AND REMANDED (*with directions*).

*Robert A. Brown* and *Richard L. Douglas* for appellant.

Under the law and the evidence the respondent is estopped to deny the abandonment of that portion of Seventh Street occupied by appellant and is estopped to deny appellant the right to occupy and use said street. The doctrine of equitable estoppel applies to municipalities the same in all respects as it applies to individuals when facts and circumstances warrant its application. Knight v. Railroad, 70 Mo. 231; Hovelman v. Railroad, 79 Mo. 632; Senter v. Lumber Co., 255 Mo. 590; Wilson v. Drainage District, 257 Mo. 266; Railroad v. Marion County, 36 Mo. 294; Edwards v. Kirkwood, 147 Mo. App. 599; Depot Co. v. St. Louis, 76 Mo. 393; Simpson v. Stoddard County, 173 Mo. 421; State v. Dent, 18 Mo. 313; O'Leary v. Met. St. Ry. Co., 87 Kan. 22; Leavenworth v. Douglas, 56 Kan. 416; City Ry. Co. v. Railroad, 166 U. S. 558; Sanitary Dist. v. Railroad, 89 N. E. 800; Chicago v. Railroad, 244 Ill. 220; Lumber Co. v. Oshkosh, 89 Wis. 449; Colorado Springs v. Colorado City, 42 Colo. 75; Sioux City v. Railroad,

129 Iowa, 694; In re Melon St., 192 Pa. St. 331; Baldwin v. Trimble, 85 Md. 396, 36 L. R. A. 489; Simplot v. Railroad, 16 Fed. 350; Davies v. Huebner, 45 Iowa, 574; Hella v. Scholte, 24 Iowa, 298; Lee v. Mound Station, 118 Ill. 304; Railroad v. Joliet, 79 Ill. 26; Gregory v. Knight, 50 Mich. 61; State v. Carr, 191 Fed. 257; Meltzer v. Chicago, 152 Ill. App. 334.

*Charles L. Faust* and *Merrill E. Otis* for respondent.

The doctrine of equitable estoppel applies generally to a municipality in its private capacity, yet the doctrine that a municipality can be estopped to assert the rights of the people to the public streets and highways of the State which the municipality holds as a trustee for the public has received the attention of the courts in a great number of cases. The decisions differ according to the policy of the different States in regard to the rights of the public to such highways. We think Missouri has vigorously denied this doctrine, and that estoppel cannot be successfully relied upon in this State to retain the possession of a street unlawfully obtained, and that out of nonuser or lapse of time estoppel does not arise. Dunklin County v. Chouteau, 120 Mo. 595; Wright v. Doniphan, 169 Mo. 601; Gaskins v. Williams, 235 Mo. 563; St. Louis v. Railroad, 114 Mo. 23; State ex rel. v. Cape Girardeau, 207 Mo. 85; Tracy v. Bittie, 213 Mo. 302; Clay Products Co. v. St. Louis, 246 Mo. 446; Wolfe v. Sullivan, 133 Ind. 331; Sims v. Frankford, 79 Ind. 446; Tainter v. Morristown, 19 N. J. Eq. 46; Commission v. Morehead, 118 Pa. 344; Webb v. Demopolis, 95 Ala. 116.

GRAVES, J.—The petition herein is in two counts: (1) an action to enjoin the defendant for ob-

268 Mo.—4

structing a certain described portion of Seventh Street in the city of St. Joseph, and (2) an action in ejectment to recover the possession of that portion of said street. In the trial *nisi* the plaintiff had judgment upon both counts of the petition, and from such judgment the defendant has appealed. The first count charged the unlawful use and obstruction of said street by the defendant in that:

"The defendant has constructed and now maintains thereon its railroad tracks, turntables, roundhouses and water tanks and has erected and now maintains across said Seventh Street, as herein described, a fence by which all of said portion of said Seventh Street has been wholly appropriated to its own use and benefit, and is now used by said defendant as its railroad yards."

By its prayer said count thus concluded:

"Wherefore, plaintiff prays that the defendant, its agents, servants, and employees, be perpetually restrained and enjoined from entering upon or exercising any right or authority over said portion of said Seventh Street hereinbefore described, or doing any other act in said street tending to obstruct, in any way, the free and common use thereof, as a highway in the city of St. Joseph, and that it be enjoined and restrained from maintaining any obstruction on said street which will in any manner interfere with the use of said street, as it was laid out and established for the use of the public generally, and for its costs in this behalf expended."

The second count, as stated, is one in ejectment. The answer sets up an equitable estoppel, in this language:

"Comes now the defendant in the above entitled cause, and for its amended answer to plaintiff's petition filed therein, admits that it is a corporation and admits that it does occupy the particular strip of

land in plaintiff's petition described, in the manner and for the uses and purposes therein stated.

"Further answering the defendant states that said strip of land is not now nor has it ever been used as a public street or highway by the city of St. Joseph or the inhabitants thereof; that it is inaccessible and wholly unfit for street or highway purposes and would not serve any purpose as a street if opened; that it has been occupied by the defendant in the manner and for the purposes stated in plaintiff's petition for more than twenty-five years; that the defendant has erected upon said strip of land valuable and expensive improvements which are now and have been used in connection with its railroad shops and other facilities adjacent thereto for more than twenty-five years; that the defendant has during the entire period it has occupied said strip of land claimed to own the same as its absolute property, openly and adversely to plaintiff and all others; that its occupancy of said strip of land for the purposes stated has been with the knowledge, consent and approval of plaintiff.

"Defendant states that plaintiff stood by and invited it to expend and saw it expend large sums of money in erecting roundhouses, machine shops, terminal facilities and in making other improvements on said strip of ground and the grounds adjacent thereto, and that all of said facilities will be useless and defendant will be damaged in a sum in excess of five hundred thousand dollars if it is denied the use of said strip of ground; that plaintiff knew when said improvements were made that they would be useless unless said strip of ground could be occupied by defendant; that both plaintiff and defendant treated said portion of Seventh Street the same as though it had been vacated when other streets in that immediate vicinity were vacated for the use of the de-

fendant, and it is apparent that it was a mere over-sight that said street was not formally vacated.

"Defendant states that if said strip of land was ever dedicated for public use as a street it has been abandoned by plaintiff as such street or highway, and plaintiff is now estopped to claim title to said strip of land as a public street or highway or for other purposes, and is estopped from complaining of or in any wise interfering with defendant's occupancy of said strip of ground."

The evidence introduced shows that South St. Joseph Addition to the city of St. Joseph was platted in 1858. That among the several streets in said addition were Sixth, Seventh and Eight Streets running north and south, said Sixth being to the west of Seventh Street. Running east and west, among other streets, were Duncan, Doniphan, Jackson, Scott, Pacific, Sycamore. In naming these streets we have begun with the one on the north and followed them in order to the south. Next north of Duncan Street is Monteray Street and next south of Sycamore is Hickory Street.

In January, 1887, the city of St. Joseph by ordinance duly vacated certain parts of Duncan, Doniphan, Jackson and Scott Streets and this ordinance reads in conclusion as follows:

"Section 5. The city reserves the right to repeal this ordinance and, without cost to the city, take possession of and reopen said street in case the St. Joseph Terminal Railroad Company shall fail to commence the construction of a roundhouse and machine shops upon said streets and the grounds adjoining the same within six months and complete the same in a condition for operation within two years after the date of the approval of this ordinance, or shall fail to maintain or operate a roundhouse and machine shops on said grounds."

These vacations left a clear field for defendant's terminals, from Monteray Street on the north to Pacific Street on the south. It is clear from the concluding section of this ordinance that the vacations were made for the purpose of having these terminals located in the city.

It would appear that Seventh Street was only platted as far north as Pacific Street. The defendant constructed its terminals between Monteray Street on the north to Hickory Street on the south, and between Sixth and Eighth streets, although not running as far east as Eighth Street. In doing so the roundhouse was made to front on Pacific Street just east of Sixth Street and in front of the northern terminus of Seventh Street. A portion of the turntable in this roundhouse projected into Pacific Street. Tracks cross Seventh Street and Pacific Street in getting into this roundhouse. In Seventh Street, in addition to the tracks, there was constructed an ash pit and water tank, as a part of these terminals.

The cost of the plant was something like $600,000 and it has been bonded for $500,000, which bonds are secured by mortgage on this property, including these streets, both Pacific and Seventh, as well as the regularly vacated streets. This construction and this expenditure were shortly after the passage of the ordinance aforesaid and in compliance therewith. Later a private individual bought property on the west side of what is called Seventh Street, and began the agitation for opening that street, and this suit was the outgrowth. The evidence shows that the opening of the streets is not a public necessity.

From the date of the plat to the date of the suit, the city has made no effort to improve these streets, in order to open them for public use. The destruction of these tracks across Seventh and Pacific streets would destroy all egress and ingress to the roundhouse. In fact, the evidence shows that the opening

of either of these two streets would actually destroy and render useless all of defendant's property of the value of a half million dollars or more. At the time of the dedication, and also at the date of the vacation ordinance, Pacific Street was a deep gully or creek through which flowed a stream of water into the Missouri River to the west. Seventh Street from Pacific Street on the north to Sycamore Street on the south was washed out and impassable for travel.

Under these conditions, after the passage of this ordinance in 1887, the defendant constructed its terminals as aforesaid, expending this large sum of money, and all to the evident knowledge of plaintiff's officers. At first the defendant used a trestle over Pacific Street, and filled up Seventh Street, but later it built a large culvert or sewer in Sixth Street, and filled up over the same, so that its tracks would thus cross, instead of crossing over the trestle. It is clearly inferable that both parties contemplated that the defendant would use both these streets at the time the vacation ordinance was passed. The streets had never been used from 1858 to 1887, and it is evident the parties looked upon them as abandoned, and for that reason did not include them in the vacating ordinance.

Other facts, if material, will be stated in the course of the opinion.

I. The present action only involves Seventh Street, but in oral argument it was asserted that dependent upon this case was one in the rear, involving Pacific Street. The two streets have been used as indicated in the statement. That is, the tracks which enter the roundhouse have to cross the streets at their intersection.

Issue.

We shall not discuss the matter of adverse possession, because not in this case. What is said in the answer about the defendant having been in possession

for a great number of years is just an incidental fact in its real plea of equitable estoppel. Likewise, what is said of abandonment of the streets may be likewise classified. The answer taken as a whole presents a clean-cut case of equitable estoppel. That is the turning point in the case.

II.   Courts apply with much caution the doctrine of equitable estoppel to municipal corporations in matters pertaining to their governmental functions, and this is right. However, it will not do to say that the courts of this State never apply

Equitable
Estoppel.

this rule of law to municipal corporations, as is seemingly urged by counsel for respondent. There are conditions under which the rule may be invoked as against municipal corporations. *Vide* Town of Montevallo v. Village School District of Montevallo, *post,* p. 217, and the cases therein cited.

If ever the doctrine of equitable estoppel should be applied in a case brought by a municipal corporation, the one at bar is a case for such application. The reading of the last section of the ordinance vacating certain streets shows that the city was offering inducements to defendant to procure the establishment of its terminal facilities within the corporate limits of said city. The general plan of such terminals indicates that the city must have known and contemplated that defendant would have to use these two streets. The city had, under the then law, the power to vacate streets. The defendant had purchased abutting property on both sides of these two streets as well as the vacated streets. It is clear that the city was fully advised as to what improvements defendant expected to erect. The fact that these two streets were not included in the vacating ordinance, can only be accounted for on the theory that both the city and defendant were proceeding

upon the idea that these two platted streets had long since been disowned and abandoned by the city. It is apparent that the city, in the rightful exercise of its legal powers, was attempting to make the way clear for the use of all this property by defendant.

The long silence of the city cannot be accounted for upon any other theory. The city stood by and encouraged the defendant in the expenditure of more than one-half million dollars, all to the city's benefit and up-building. The city stood silently by until this property was mortgaged to secure its bonds, and until those bonds were in the hands of innocent parties. For the city to win would be to destroy the security for these bonds. To permit the city by a recovery in this suit to destroy defendant's valuable property is inequitable in the strongest and strictest sense.

The public rights should not be allowed to destroy vast private rights under the peculiar facts we have here. There are many cases where public rights, through the doctrine of equitable estoppel, have been forced to give way to the more equitable rights of private parties. Vide "Town of Montevallo" case, supra, for a citation of the cases. The doctrine of equitable estoppel should be applied in this case, and when applied the judgment nisi is wrong. Let the judgment be reversed and the cause remanded with directions to enter an appropriate judgment for the defendant. It is so ordered. All concur, except Bond and Walker, JJ., who dissent in an opinion by Bond, J.

## I.

BOND, J. (dissenting).—This case was assigned to me in Division and an opinion prepared in which two of the judges concurred and two dissented, wherefore the case was transferred to Banc, wherein the

Statement. divisional opinion not being adopted, the cause was re-assigned and is now disposed of in the majority opinion written by our brother GRAVES.

I am unable to concur in the views expressed in that opinion. The material facts as they are shown in the record in this case are undisputed.

The streets sought to be recovered by the city in this action were formally dedicated to it by a recorded plat in 1858. They are known as portions of Seventh Street and Pacific Street. Across the intersection of these streets the defendant has laid tracks connecting its roundhouse, situated on abutting property, with other property owned by it, on which latter property its main tracks are laid. These connecting tracks are used for access and exit from the roundhouse. Defendant never at any time sought or obtained any franchise or right from the city of St. Joseph to make any use of the portions of Pacific and Seventh streets over which it laid such connecting tracks. Defendant, however, fenced off that portion of these streets and placed in the inclosure an ash pit and a water tank. Defendant has never at any time paid any sort of taxes on the portions of the streets thus occupied by it. In 1899 the plaintiff city, at its own expense, built a district sewer along Seventh Street and that portion of it occupied by defendant. In assessing the cost of this improvement, Seventh Street was excluded from any assessment for the reason that it was a public street, the entire cost being paid by the city and other abutting property owners. In 1904, the plaintiff city constructed in a similar manner a sewer on Pacific Street and under the portion in possession of defendant. These improvements by the city, from the burden of which Seventh Street was thus exempted, are undisputed and were made with the knowledge of the defendant. Otherwise than such use of the streets by the city,

the defendant has held possession of them for about twenty-five years. The abutting property on which defendant established its roundhouse and other permanent improvements was acquired by it after a vacation of the streets running through it by the city. But the defendant did not, at that time, seek to obtain a vacation of the portions of Pacific and Seventh Streets subsequently used by it and has never received any authority, either written or oral, from the city or any of its representatives to make such use of that property. None of the substantial improvements made by defendant are located on the portions of Seventh and Pacific Streets over which it subsequently placed its connecting tracks.

The president of the defendant company testified, in substance, that if it should be deprived of the facility of entering its roundhouse, afforded by its connecting tracks running across portions of Seventh and Pacific Streets, it might be necessary to remove its terminal plant from the city or to suffer a loss equal to its value, which he estimated at five or six hundred thousand dollars. The present suit concerns only a portion of Seventh Street. The defendant set up no title to the property, but pleaded estoppel and abandonment against the city.

Upon the submission of the case a decree was rendered for plaintiff and writ of restitution ordered, from which defendant appealed.

## II.

The character of the possession of defendant cuts no figure in the solution of the question presented by this appeal; for since the statute which took effect August 1, 1866 (R. S. 1909, sec. 1886), no title resting on adverse holding can be created against the lands of the State or their auxiliaries in government, municipal corporations. [City of St. Louis v. Mo. Pac. Ry. Co.,

Vacating Streets.

114 Mo. l. c. 24; Brown v. City of Carthage, 128 Mo. 10; Columbia v. Bright, 179 Mo. l. c. 454; Wright v. Doniphan, 169 Mo. l. c. 614; State ex rel. v. Road Co., 207 Mo. l. c. 106.]

Nor can a city vacate its streets except in the exercise of a power given in express terms or by necessary implication. [2 Elliott on Roads and Streets (3 Ed.), sec. 1177; Bingham v. Kollman, 256 Mo. l. c. 591.]

The Legislature has thought proper to prescribe a different rule with reference to *"county roads,"* for after providing for their establishment and legal status as such, the statute concludes, to-wit: "And non-user by the public for a period of ten years continuously of any public road shall be deemed an abandonment of the same." [R. S. 1909, sec. 10446.] That statute was applied in a suit involving a county road (Johnson v. Rasmus, 237 Mo. l. c. 591) and also in a case where it appeared that Kansas City had acquired the territory over which a road passed whose legal existence was claimed to have lapsed while it was a county road. Kansas City passed an ordinance for the grading of this road. Thereupon the adjoining property owners denied there was any such road in existence at the time of the enactment of the ordinance. The city had taken no steps after its acquisition of the property to open and establish a street over the line of the old road. Hence it was ruled that the issue thus joined was one of abandonment of a public road within the purview of the statute and cases cited in Kansas City v. Smith, 238 Mo. l. c. 336. In each of the above cases the statute was applied according to its terms to public roads established in a county and nothing was ruled affecting the application of that statute to the streets of a city. Indeed, the obvious fact that it has not application in such cases was noted in Clay Products Co. v. St. Louis, 246 Mo. l. c. 461, in which case it was

ruled that a city is not estopped to assert title to its street by the written statement of the street commissioner that the street does not exist, nor by its own ordinance condemning a right of way over it for sewers and water pipes.

The result of the cases in this State is that a city has no power to part with the title to its streets which it holds in trust for the public except by a valid vacation.

## III.

The learned counsel for appellant insists that plaintiff's recovery is barred under the doctrine of equitable estoppel. The rule on this subject is that a municipal corporation in the attempt to exercise its lawful powers may encounter the preclusion of an estoppel under the same conditions which would make it a defense against an individual, if it should turn out that the act of the corporation was irregularly or imperfectly performed and that it would be against right and justice or a fraud to permit its disavowal against one who in good faith relied upon its validity and in consequence was injured. And that is as far as the rule has been carried in this State or in correct decisions elsewhere. [See cases cited in appellant's brief.] No estoppel of any kind can ever arise in any case where the municipal corporation undertakes to do any act in violation of the general law or in contravention of its charter. Such an act would be in a strict sense *ultra vires* and, therefore, could not be the basis of any estoppel against its repudiation.

*Equitable Estoppel.*

In the instant case the City of St. Joseph never attempted at any time to exercise its lawful power to vacate the portion of the street occupied by the defendant and never gave defendant any color of right to cross them with its tracks. The city was under

no duty to grade, pave or improve these parts of its streets until such time as the growth of population and expansion of the city should render it necessary in the judgment of the municipal authorities that the streets should be put in a condition suitable for use by the public. Such improvement of its streets is, however, a matter wholly within the discretion of the city authorities and inaction on their part does not affect the right of the city to assert its title as trustees of the street for the public and to eject any intruders. [City of St. Louis v. Mo. Pac. Ry. Co., supra, l. c. 24.]

The defendant knew, from its terms, that the vacation ordinance of 1887 did not include either Seventh or Pacific Streets and it had actual knowledge of their location, for it purchased property adjoining and bounded by these streets. Besides, the law imputes knowledge of the existence of streets to all persons concerned. [Wright v. Doniphan, supra, l. c. 613.]

The city officials never stated to defendant that the property in question was not a public street, but on the contrary treated it as such by running sewers and water pipes underneath it and exempting the property from any assessment therefor, on the ground that it was a public street, and this necessarily to the knowledge of defendant who was in the occupancy at the time. The bare facts of the record are that defendant has occupied these parts of these streets by crossing them with its tracks and afterwards fencing them off for twenty-five years and without any authority granted so to do and with knowledge at all times of the title of the city, and if now dispossessed, might suffer whatever injury might result from losing a track connection between its roundhouse and other property which it established, not in reliance on any affirmative act or representation on the part of the city, but in its own wrong.

It is impossible that these facts comprise the essential elements creating an estoppel *in pais* against the enforcement by the city of its rights to the use of its streets. [Blodgett v. Perry, 97 Mo. l. c. 273; Austin v. Loring, 63 Mo. l. c. 19; Spence ᐯ. Renfro, 179 Mo. l. c. 422; Bank v. Nichols, 235 Mo. l. c. 412; Bigelow on Estoppel (3 Ed.), 484.] Neither can the city be deprived of redress for the violation of its legal rights by defendant because the restitution of its property might inflict a substantial loss on the disseisor. [Steinmetz v. Federal Lead Co., 176 S. W. 1049.]

## IV.

The learned majority opinion seems to rest its conclusion that the city has lost the title to the portion of its public street under the facts in this record, upon the doctrine of equitable estoppel. The fault with that conclusion is, not that such doctrine may not be applied in exceptional cases (where the city has imperfectly executed a power not forbidden in reliance upon which another has acted to his detriment), but that the opinion has wholly overlooked the undisputed facts in the present record which would preclude the application of that doctrine, not only in the limited instance in which such a defense may be interposed to a suit by a city or other auxiliary to the State government for the recovery of its streets, but would preclude its application to transactions between other persons wherein it is allowed the fullest latitude. The authority cited in the learned majority opinion is the "Town of Montevallo v. Village School District of Montevallo" *post,* p. 217. A mere glance at the conceded facts in that case will disclose that they are not clearly connoted in the learned majority opinion. In that case the issue between the Town of Montevallo and the School District of that town was the title to a public square (three

hundred feet square) lying in the center of the plat which was dedicated in 1866 as the site of a future town. On the property thus dedicated, the town grew up and was incorporated in 1871. The dedication was properly recorded. Thereafter (in 1881 the board of trustees of the incorporated town entered an order of record on the town records, *"ceding"* the public square to the directors of the Village School District of Montevallo, for school purposes. Upon the faith of this *affirmative* attempt to grant the land to it, the school board took possession of the property and erected thereon a stone school building costing three thousand dollars. About twenty-five years thereafter the town brought a suit to recover the public square which it had thus attempted to vacate to the use of the school district. It is perfectly evident from this brief recital of the material facts in the case of Town of Montevallo v. Village School District, that they only resemble the real facts of the present case, in the way that a resemblance can be claimed between things which are contradictory of each other. In the Montevallo case, the town, by *affirmative* action, entered upon its own records, endeavored to part with its title to a public square; in effect, attempted to make a deed to the school district and turned over the possession of the property to the school district for the purpose of enabling it to erect, at great expense, a stone building, and permitted it to hold the possession and use of it for about twenty-five years. Such a transaction is the exact opposite of what was done in the instant case. In that case the city met with the estoppel of its deed or attempted deed. Here an estoppel is sought to be created against the city without the existence of any deed or *affirmative* action on its part whatever. Nor was there a scrap of paper denoting any intention on the part of the city of St. Joseph to part with its title to the small portion

of Seventh Street which defendant has appropriated; neither is there a ray of evidence that the city, through any of its representatives, ever, at any time, gave the defendant any right or title to that portion of Seventh Street. In this state of facts there was no act or deed by the city upon which defendant could have relied as giving it title to the street and none is pointed out in the learned majority opinion.

Therefore I think that opinion contravenes the settled law conserving the right of a city to the use of the property held by it in trust for the people of the State, and wholly misconceives the true basis upon which in exceptional instances an equitable estoppel may be invoked against it, and has undertaken to apply that rule, as against a city, to a state of facts which would not make it applicable as against an individual. For these reasons I cannot agree with the views expressed in the prevailing opinion. *Walker, J.*, concurs in these views.