Glen HARRISON, Jr. and Sophia B. Harrison, Plaintiffs-Appellants,

v.

STATE HIGHWAYS AND TRANSPORTATION COMMISSION, Defendant-Respondent.

No. 14814.

Missouri Court of Appeals, Southern District, Division Two.

June 9, 1987.

C.H. Parsons, Jr., Parsons, Mitchell & Wilson, P.C., Dexter, for plaintiffs-appellants.

Rich Tiemeyer and John W. Koenig, Jr., Sikeston, for defendant-respondent.

FLANIGAN, Judge.

Plaintiffs Glen Harrison, Jr., and Sophia B. Harrison brought this declaratory judgment action against the State Highways and Transportation Commission ("the commission"). The petition sought a determination of the present status of a "temporary borrow pit easement," ["the 1959 easement"], acquired by the commission as a result of a 1959 condemnation action, across land now owned by the plaintiffs in Stoddard County.[1] The petition alleged that the easement "has heretofore expired and no longer conveys to the commission any rights for digging of road building material."

The petition further alleged: In 1983 the commission filed against plaintiffs a condemnation action affecting the same land which was subject to the 1959 easement; in the 1983 action the commission claims that it is still the owner of the 1959 easement and that "therefore the 1959 easement is not (sic) to be considered in taking into account any damages of the plaintiffs in the [1983 condemnation action]"; in the 1983 condemnation action "no appraiser can reach any proper decision concerning

---

**1.** One of the commission's witnesses testified that a borrow pit is an area "from which the highway department takes ground for fill for interchanges, road beds, etc. It is actually borrowing dirt from a particular site, digging into the earth and taking it somewhere else for road construction. When you take a borrow pit easement, the road will not actually be built on the easement, but rather building materials for the road will be removed from this acreage."

plaintiffs' damages" until it is first determined whether the commission still owns the 1959 easement or whether the easement "has already expired" or "has been terminated."

The answer of the commission pleaded that the plaintiffs were the owners of the described land, subject to various encumbrances, including the 1959 easement in favor of the commission, the easement having been acquired by the commission's statutory predecessor. The answer admitted the pendency of the 1983 condemnation action and claimed that the 1959 easement should be considered when establishing the "before-taking" value of the subject property. The answer prayed that the 1959 easement "be confirmed." [2]

Following a nonjury evidentiary hearing, the trial court made findings of fact and entered its judgment declaring that the 1959 easement "remains in full force and effect" and that the commission "now has all of the rights obtained by it upon the original taking of the easement, including the right to remove road building material." Plaintiffs appeal.

Plaintiffs' sole "point relied on" is that the trial court erred in finding that the 1959 easement was still in effect because the 1959 easement "was extinguished by non-use of the easement by the commission, combined with exclusive use of the land by the underlying landowners [plaintiffs and their predecessors in title] adverse to the easement for more than 20 years and the expenditure by the landowners of substantial funds to improve the land during that period."

There is no significant factual dispute. In 1959 the statutory predecessor of the commission filed a condemnation action against the land now owned by plaintiffs. In that proceeding the commission obtained, and paid for, the 1959 easement with respect to 22.33 acres of plaintiffs' land. The easement was described as fol-

lows: "a temporary easement in the following 22.33 acres for obtaining road building material, all right of [the commission] in said tract to forever cease *upon the completion of the construction of the future south lane (eastbound lane) and the completion of the north lane (westbound lane)* [*of U.S. Route 60, Stoddard County*], to-wit: [metes and bounds description of the 22.33 acres]." (Emphasis added.)

A witness for the commission testified that "the future south lane (eastbound lane) has never been constructed but construction of it is still planned."

In 1959 the land subject to the easement was owned by plaintiffs' predecessor in title. Plaintiffs obtained title to the land in 1973, although plaintiff Glen Harrison, Jr. had farmed it with a partner since 1964.

Plaintiffs farmed the 22.33 acres described in the 1959 easement and spent "$250 to $350 per acre on the property in rough grading to fill in holes and sloughs and to land plane and smooth it." Plaintiffs also spent about $50 per acre per year for fertilizers and chemicals on that acreage. The commission has never removed any road building material from the 22.33 acres.

At the time of the 1959 condemnation action the commission planned to develop Highway 60 as an expressway with some direct access to the highway. In the 1983 condemnation action the commission's plans were changed to "a freeway design with access only at interchanges, with outer roads on both sides and an interchange and overpass at Route AD."

In the 1983 condemnation action the commission sought to condemn, as an additional temporary borrow pit easement, a strip of land west of, and adjacent to, the 1959 easement and also to condemn, for right-of-way purposes, 1.19 acres located in the 22.33 acres described in the 1959 easement. According to the commission's brief, to

**2.** The commission has not challenged plaintiffs' action for a declaratory judgment on the ground that the basic issue, whether the 1959 easement still exists or was extinguished, could be resolved in the 1983 condemnation action itself. In the interest of judicial economy, this court

has concluded not to examine the merits of such a challenge if it had been made. See 22 Am. Jur.2d Declaratory Judgments, § 16, p. 857. See also *Tierney v. The Planned Ind. Exp. Auth. of K.C.,* Mo. (Mo.App.1987—W.D. No. 38208— 2–10–87).

which plaintiffs make no reply, it is the valuation of the 1.19 acres which gave rise to the issue of the present status of the 1959 easement. The commission argues that "the newly acquired 1.19 acres of right-of-way was subject to the [1959 easement], [and] it should not be valued the same as unencumbered farm land."

The trial court found that all of the conveyances of the land since the taking of the 1959 easement were made subject to the easement, that the 1959 easement was at all times a matter of public record, and that when plaintiff Glen Harrison, Jr. became the owner of the property, he knew of the existence of the 1959 easement. The trial court also found that the commission "has never intended to abandon the easement, that it has not committed any acts constituting abandonment, that it has not relinquished possession of the property with intent to abandon the easement, and that it has not abandoned the easement."

Plaintiffs advance three grounds in support of their assertion that the 1959 easement was extinguished prior to the commencement of the 1983 condemnation action. The grounds are: (a) nonuse of the easement by the commission; (b) exclusive use of the land, by plaintiffs and their predecessors in title, adverse to the easement and for more than 20 years; (c) expenditure, by plaintiffs and their predecessors in title, of substantial funds to improve the land for over 20 years.

█ "[M]ere nonuser, for a period however extended or continued, of an easement created by a grant will not amount to an abandonment." *Franck Bros, Inc. v. Rose*, 301 S.W.2d 806, 812[14] (Mo.1957). To the same effect see *Dalton v. Johnson*, 320 S.W.2d 569, 574[9] (Mo.1959). A title acquired by eminent domain is, in legal effect, one acquired by grant. *Bethany Presbyterian Church v. City of Seattle*, 154 Wash. 529, 282 P. 922, 924[4] (1929). See also *Comm'r of Int. Rev. v. Plestcheeff*, 100 F.2d 62, 64 (9th Cir.1938); *Petition of City of Seattle*, 43 Wash.2d 445, 261 P.2d 416, 417 (1953).

One of the cases relied upon by plaintiffs in support of ground (a) is *Barkshire v.*

*Drainage Dist. No. 1 Reformed*, 136 S.W.2d 701, 707[1] (Mo.App.1940), where this court said: "[T]he non user of an easement for a period prescribed by the statute of limitations, constitutes an abandonment of the right." The foregoing is a misstatement of the law as pointed out in *Franck Bros, Inc.*, supra, where the supreme court said, at p. 812:

"However, we note that in the case of *Barkshire v. Drainage Dist. No. 1 Reformed*, Mo.App., 136 S.W.2d 701, the Springfield Court of Appeals construed our case of *Hatton v. Kansas City, C. & S.R. Co.*, 253 Mo. 660, 162 S.W. 227, as holding that nonuser of an easement for the period prescribed by the statute of limitations constitutes an abandonment. We do not agree with that construction. The statement (which was actually dictum) referred to was, 253 Mo. 675, 162 S.W. 232: 'Mere nonuser of an easement resting in grant * * * for a period short of that prescribed by the statute of limitations, will not extinguish the easement, unless accompanied by an intention on the part of the owner of the dominant estate to abandon it.' This is not the equivalent of saying that mere nonuser for the period prescribed by the statute will extinguish the easement. We note that the court, in support of the foregoing statement, cited the *Roanoke Inv. Co.* case, supra, which clearly states that nonuser for the statutory period will not extinguish the easement unless accompanied by the adverse possession of the servient owner or other acts by the dominant owner indicating a clear intention to abandon the easement. This was the meaning we think the court intended to convey in the quoted statement from the *Hatton* opinion."

"As a general rule, an easement acquired by grant or reservation cannot be lost by mere nonuser for any length of time, no matter how great. The nonuser must be accompanied by an express or implied intention to abandon." 25 Am.Jur. Easements and Licenses, § 105, p. 509. Similarly, with respect to rights taken by eminent domain "[M]ere nonuser will not work an

abandonment unless continued for a sufficient length of time to indicate an actual intention to abandon." 26 Am.Jur.2d Eminent Domain, § 146, p. 809. See also 30 C.J.S. Eminent Domain, § 458, pp. 660–661.

The nature of the 1959 easement was such, especially in view of the unpredictability of highway appropriations, that the commencement and duration of its exercise were indefinite. Such factors have been recognized in cases involving borrow pit easements.

In *Mo. High. & Transp. v. Cir. Ct. Franklin Cty.*, 656 S.W.2d 829 (Mo.App. 1983), the court held that in a condemnation action to obtain a temporary construction easement the petition of the highway commission did not have to specify the length and duration of the easement and that the damages arising out of such easements "are a matter of evidence and expert appraisal, just as are many other items of damage in condemnation cases." In *State ex rel. Mo. Hwy. & Transp. v. Pracht*, 665 S.W.2d 697 (Mo.App.1984), the court held that the highway commission, in an action to condemn a temporary construction easement and permanent right-of-way easement, did not have to make a binding commitment to commence or complete construction within a reasonable time so as not to unreasonably burden the land and the owners of the land subject to the temporary easement. The court pointed out that the commission "would be hard put to make a binding commitment as to the commencement of construction."

■ This court holds that mere nonuser of the 1959 easement by the state, over the 24 years between its acquisition and the filing of the 1983 condemnation action, did not, standing alone, extinguish the easement and that ground (a) has no merit. The fact of such nonuser, insofar as it may affect ground (b) or ground (c), will be considered in the respective discussions of those grounds.

In ground (b) plaintiffs claim that the 1959 easement was extinguished because plaintiffs and their predecessors in title used the land exclusively and adversely to the easement for more than 20 years.

Plaintiffs' use of the land, according to plaintiffs' brief, consisted of "farming it continuously since 1964," spending "$250 to $300 per acre on the property in rough grading to fill in holes and sloughs and to land plane and smooth it," doing some "drainage work on the property in addition to rough grading it" and spending $50 per acre per year for "lime, fertilizer and chemicals to keep it fertile."

Plaintiffs do not point out in what respect, if any, such activities on their part constituted use of the land "adverse to the easement." It is true that the commission has not exercised the state's rights under the 1959 easement, but there is no showing by plaintiffs that such rights could not now be exercised in spite of the use which plaintiffs have made of the land and the expenses which plaintiffs have incurred. In any event, the claim of adverse possession or adverse user against the state must be considered in light of § 516.090.

■ Section 516.090 reads:

"Nothing contained in any statute of limitation shall extend to any lands given, granted, sequestered or appropriated to any public, pious or charitable use, *or to any lands belonging to this state.*" (Emphasis added.)

Section 516.090 is not confined to "lands" acquired by the public in fee. It also applies where the public interest is that "of a nominal fee or a simple easement." *City of Caruthersville v. Huffman,* 262 Mo. 367, 171 S.W. 323, 325 (1914).

Section 516.090 eliminates claims based on adverse possession against the state, *State ex rel. State Hwy. Com'n v. Dunn,* 569 S.W.2d 353, 357[4] (Mo.App.1978). Possession under a claim of ownership taken after § 516.090 went into effect (August 1, 1866) does not set the statute of limitations in operation as against the state and avails the plaintiffs nothing. *Brotherton v. City of Jackson,* 385 S.W.2d 836, 842 (Mo.App.1965). Thus, a claimant cannot claim a title by adverse possession to land within the correct boundaries of a state highway. *Bowzer v. State Highway Commission,* 170 S.W.2d 399, 403 (Mo.1943).

In *Dudley v. Clark,* 255 Mo. 570, 164 S.W. 608, 612[2] (1914), the supreme court pointed out that the law favors pious and charitable uses and public uses and that § 516.090 was enacted in furtherance of that idea. Prior to the enactment of § 516.090, said the court, the public policy of the state allowed limitations to run against the state and municipalities. "It was found to be a ruinous public policy, for under it school lands, roads, parks, streets, etc., were lost to the state and public through the laches or ignorance of the public or of officials representing it.... To put a stop to that mischief was one of the main objects of [§ 516.090.]" *Dudley,* 164 S.W. at 612.

Plaintiffs argue, however, that the state has *abandoned* the 1959 easement by nonuser for a period of five years. This argument involves the intention and conduct of the state as distinguished from the argument based on adverse possession or adverse user which involves plaintiffs' conduct and which was eliminated by § 516.090.

In a case dealing with the "pious use" of land, as used in § 516.090, the court held that land otherwise within the protection of § 516.090 may be abandoned. *Anson v. Tietze,* 354 Mo. 552, 190 S.W.2d 193, 196[5] (1945). In *Anson* the "pious use" was the use of land for a college. The college building was destroyed by fire in 1925 and was never rebuilt. Plaintiffs devoted the land to general farming purposes for 19 years after the fire. This evidence was held sufficient to show an abandonment of the pious use by the plaintiffs, and the defendant, a city, had meanwhile acquired the right, by adverse user, to use a portion of the abandoned "pious use" land as a roadway.

Plaintiffs' brief says:

"The period of time required to establish abandonment of a road is five (5) years. Section 228.190 R.S.Mo. The same period applies to abandonment of state highways. Section 227.090 R.S.Mo. and *Floreth v. State Highway Commission,* 472 S.W.2d 614 (Mo.1971). Surely a 'temporary' borrow pit easement for

the construction of a road cannot enjoy greater protection under the law than the road itself."

Section 228.190 reads:

"All roads in this state that have been established by any order of the *county commission,* and have been used as public highways for a period of ten years or more, shall be deemed legally established public roads; and all roads that have been used as such by the public for ten years continuously, and upon which there shall have been expended public money or labor for such period, shall be deemed legally established roads; and nonuser by the public for five years continuously *of any public road* shall be deemed an abandonment and vacation of the same. (Emphasis added.)

Section 227.090 reads:

"All laws of this state relating to the construction, maintenance or obstruction of *roads,* which do not conflict with the provisions of chapters 226 and 227, RSMo 1949, and are consistent with the provisions of said chapters, shall apply to the *construction, maintenance* and *obstruction* of *all state highways,* and the duties and powers imposed by such laws on certain officials shall devolve upon the engineer, or other officer of the highway commission designated by the commission." (Emphasis added.)

Section 228.190 deals, generally, with roads "established by any order of the county commission." It is true that the last clause in the statute reads: "No use by the public for five years continuously of *any public road* shall be deemed an abandonment and vacation of the same." In spite of the breadth of that language, it has been held that the nonuser provision does not apply to city streets, *Winschel v. County of St. Louis,* 352 S.W.2d 652, 654 (Mo.1961), nor does it apply to title to lands voluntarily conveyed in trust to be used for the purpose of establishing streets as they are needed. *State v. Herman,* 405 S.W.2d 904, 908[7] (Mo.1966).

*Floreth v. State Highway Commission,* 472 S.W.2d 614 (Mo.1971), relied on by plaintiffs, did involve a state highway. Al-

though the opinion mentions § 228.190, the supreme court merely said that the appellants did not "assert an express or statutory vacation or abandonment of the roadway pursuant to §§ 228.110 or 228.190." The court held that the highway commission did not abandon an old right-of-way easement "but retained the easement under its jurisdiction as a state highway." *Floreth v. State Highway Commission*, supra, 472 S.W.2d at 619. That holding, however, was not based on § 228.190.

In *Floreth*, the court cited *Lloyd v. Garren*, 366 S.W.2d 341 (Mo.1963). In *Lloyd*, the state highway commission had obtained, by deed from the landowner, an easement to maintain a state highway. Later, "according to the records of the state highway department, ... it abandoned [the easement]." *Lloyd*, at 342. In *Floreth*, the court pointed out that, unlike the situation in *Lloyd*, the records of the commission indicated an intent on its part not to abandon the easement but, specifically, to retain it.

■ Plaintiffs have cited no case where § 228.190 has been held applicable to the abandonment of a state highway. Plaintiffs claim that § 227.090 has the effect of making the five-year nonuser portion of § 228.190 applicable to a state highway. It is at least arguable that § 227.090 does not have that effect. That statute deals with all laws of this state relating to the "*construction, maintenance or obstruction* of roads...*." It is arguable that nonuser of a highway is not "construction" or "maintenance" or "obstruction" of a highway. It is, however, unnecessary to determine that issue, if it is one, because the 1959 easement is not "any public road" as that term is used in § 228.190. It is an easement obtained for use in connection with the construction of the highway and by its terms it would cease upon completion of the eastbound and westbound lanes of Route 60 in Stoddard County. The public would not travel over the 1959 easement, for it is not a right-of-way easement. The 1959 easement is not a public road itself and any issue of its abandonment does not entail consideration of § 228.190.

■ Although an easement created by grant is not extinguished by mere nonuser, however extended the period of nonuser may be, such easement may be extinguished by abandonment.[3] *Ball v. Gross*, 565 S.W.2d 685, 689 (Mo.App.1978). If the nonuser is accompanied by conduct of the owner of the easement which definitely evinces an intention to surrender the right, the easement is extinguished. Id.

In *Anson v. Tietze*, supra, a case dealing with a "pious use" of the type, like "any lands belonging to the state," protected by § 516.090, the court said, 190 S.W.2d at p. 197:

"Mere nondevotion to a use, while a fact for consideration, will not necessarily constitute the abandonment of that use. The intention to abandon must accompany the nondevotion to the use. This intention may be established by expressed declaration or by acts and conduct consistent with an intention to abandon. Conduct raising an issue of an intent to abandon is not destroyed by that person's sworn testimony he did not intend to abandon. His testimony and his acts and conduct are evidentiary only, presenting a fact issue, and neither is conclusive over the other. Abandonment, so far as resting upon the element of intention, operates instanter. The ownership of land, as well as the right of easement over the land of another, is considered beneficial. For this among other reasons there is no presumption of an abandonment of such assets."

**3.** In *Aggregate Supply Company v. Sewell*, 217 Ga. 407, 122 S.E.2d 580 (1961), the court held that an easement giving the holder a right to remove sand and gravel from the servient tenement was a profit a prendre and was a corporeal hereditament which could not be lost by abandonment although a mere easement could be so lost. In *Barton v. Gammell*, 143 Ga.App. 291, 238 S.E.2d 445, 447 (1977), the court of appeals pointed out that Restatement, Property, § 450, Special Note (1944), discards the term "profit a prendre" and treats the interest as an easement. The court of appeals referred to *Aggregate Supply Company* as a holding "in splendid isolation."

■ The burden of proof to show abandonment is on the party asserting it. *Wilson v. Wheeler Farms, Inc.*, 591 S.W.2d 287, 289[5] (Mo.App.1979). The question of abandonment is largely one of intention, and intention to abandon must be proved and it may be inferred only from strong and convincing evidence. *Harris v. Consolidated School Dist. No. 8 C, Dunklin Co.*, 328 S.W.2d 646, 650 (Mo. banc 1959); *Gibson v. Sharp*, 277 S.W.2d 672, 679 (Mo. App.1955). In *Wilson* the court held that the mere fact that a school district never used property was not sufficient to show abandonment because nonuse alone does not constitute abandonment.

The intention of the owner of an easement to abandon it "must be followed by an actual relinquishment of possession, so that and to the extent that the property abandoned is left free and open to be appropriated by the next comer." *Board v. Nevada School Dist.*, 363 Mo. 328, 251 S.W.2d 20, 26 (1952).

"Mere nonuser, even though for twenty years, will not of itself extinguish the easement. It must be accompanied with the express or implied intention of abandonment, and the owner of the servient estate, acting upon the intention of abandonment and the actual nonuser, must have incurred expenses upon his own estate. The three elements, nonuser, intention to abandon, and damage to the owner of the servient estate, must concur in order to extinguish the easement." *Scarritt v. Kansas City, O. & S. Ry. Co.*, 148 Mo. 676, 50 S.W. 905, 906 (1899). "To constitute an abandonment of an easement acquired by grant, acts must be shown of such an unequivocal nature as to indicate a clear intention to abandon." *Roanoke Investment Co. v. Kansas City & S. E. R. Co.*, 108 Mo. 50, 17 S.W. 1000, 1003 (1891).

"As to what facts and circumstances will be sufficient to show an abandonment, no general rules can be laid down." Lewis, Eminent Domain, 3rd Edition, § 862, p. 1504. "Abandonment is made up of two elements, act and intention. It includes both the intention to abandon and the external act by which the intention is carried

into effect. The intention of the party has been said to be the important fact." 30 C.J.S. Eminent Domain, § 458, pp. 659–660.

■ Plaintiffs have shown no affirmative acts on the part of the state evidencing an intention to abandon the 1959 easement. Cf. *Lloyd v. Garren*, supra. By the language of the easement itself, it was to continue until the completion of the eastbound and westbound lanes. There was no showing that the state at any time abandoned its plans to build those lanes. Indeed the evidence was otherwise.

J.T. Yarnell, District Surveys and Plans Engineer for the commission, testified that the "future eastbound lane" mentioned in the 1959 easement, has never been constructed but "it is still planned to be constructed.... It was planned for future construction.... Subject to the revisions I have mentioned, we still intend to build that same project.... The dirt that's confined in [the 1959 easement] is still needed by the highway commission today."

On cross-examination by plaintiffs' counsel, Yarnell testified that changes in plans, contemplated by the 1983 condemnation action, necessitated purchase of additional right-of-way and that he could not tell the court "with any degree of certainty as to when that project might be built.... We hope that it will not be ten years down the road, but it's indetermined...." After the original condemnation, a future project was designed but "the future project in 1959 is the project we are talking about now.... The design change to include an overpass at Route AD was made in 1973."

The foregoing evidence, far from reflecting an intention to abandon the 1959 easement, is inconsistent with such an intention and shows a continuing plan on the part of the commission to utilize the 1959 easement.

The institution of the 1983 condemnation action signified an intention on the part of the state to complete the two lanes. Plaintiffs adduced no evidence that the state at any time reached an intention to abandon the 1959 construction project in connection with which the 1959 easement was taken. In view of § 516.090, ground (b) could not

be predicated on acts on the part of plaintiffs constituting adverse possession, and the trial court was justified in finding that the state had not abandoned the 1959 easement. Ground (b) has no merit.

In support of ground (c), plaintiffs rely on *City of St. Joseph v. St. Joseph Terminal R. Co.*, 268 Mo. 47, 186 S.W. 1080 (Mo. banc 1916), a decision based on equitable estoppel. There the city brought an ejectment action against the railroad to recover possession of a portion of Seventh Street which the railroad had obstructed by placing tracks across it. Seventh Street, along with other streets, had been dedicated to the city in 1858. In 1887 the city vacated certain streets as an inducement to the railroad to locate terminals in the city. The vacation ordinance failed to include Seventh Street. The railroad expended half a million dollars in building the terminals and in doing so used the portion of Seventh Street in issue. That portion had never been opened for street travel. The opening of the street was not a public necessity and would destroy the value of the terminals.

Under those circumstances the majority of the supreme court invoked the doctrine of equitable estoppel against the city but expressly stated that it would not discuss matters of adverse possession or abandonment of the street. The court said that the city had encouraged the railroad to spend $500,000 on the terminals, all to the city's benefit, and that the city stood silently by until railroad land was mortgaged to secure bonds which were in the hands of innocent parties. "The public rights should not be allowed to destroy vast private rights under the peculiar facts we have here."

The two dissenting judges were of the opinion that the railroad could not claim a right to maintain its tracks in Seventh Street on the basis of "adverse holding" because § 516.090 was fatal to such a claim. The majority opinion took no issue on that point. The dissenters were also of the opinion that any claim by the railroad that the city had abandoned Seventh Street could not be based on § 228.190, supra, which deals with "county roads," and again the majority opinion took no issue on that point.

No facts comparable to those which influenced the majority in *City of St. Joseph v. St. Joseph Terminal R. Co.*, 268 Mo. 47, 186 S.W. 1080 (Mo. banc 1916), are present here. Although the plaintiffs have spent considerable money in grading and fertilizing their land which was subject to the 1959 easement, it seems a reasonable inference that plaintiffs have derived profits from such expenditures. They were, of course, made with actual and record knowledge on the part of the plaintiffs of the existence of the easement.

"As a general proposition, the doctrine of estoppel is not applicable to acts of a governmental body ... and has been jealously withheld and only sparingly applied against governmental bodies and public officers acting in the official capacity when necessary to prevent manifest injustice." *Bartlett & Co. Grain v. Director of Revenue*, 649 S.W.2d 220, 224[7] (Mo.1983). "Equitable estoppel is applied against a governmental body only in exceptional circumstances and with great caution." *Independent Stave v. Missouri Hwy. & Transp.*, 702 S.W.2d 931, 935 (Mo.App.1985).

"The elements of equitable estoppel are (1) an admission, statement or act inconsistent with a claim afterwards asserted; (2) action by the other party on the faith of such admission, statement or act; and (3) injury to that party resulting from allowing the first party to contradict or repudiate such admission, statement or act." Id. at p. 935.

In *Van Kampen v. Kauffman*, 685 S.W.2d 619, 625 (Mo.App.1985) the court said:

"The party asserting an estoppel bears the burden of proving it.... Every fact essential to create it must be established by clear and satisfactory evidence....

One cannot set up another's act or conduct as the ground of an estoppel unless the one claiming it be misled or deceived by such act or conduct, nor can he set it up where he knew or had the same means of knowledge as the other as to the truth."

Here the state made no admission or statement that the 1959 easement no longer existed. It did not perform any act inconsistent with its claim, made in the 1983 condemnation action, that the 1959 easement was still in effect. There was no showing that plaintiffs, in devoting the land to farming purposes, were misled or deceived by any conduct on the part of the state. The plaintiffs had knowledge of the existence of the 1959 easement at the time they obtained title to the land. The conduct of the plaintiffs in farming the land was not inconsistent with the right of the state to exercise the 1959 easement, and the state was under no duty to discourage that conduct. The record did not require the trial court to invoke the doctrine of equitable estoppel against the state. Ground 3 has no merit.

The judgment is affirmed.

PREWITT, P.J., and HOGAN and MAUS, JJ., concur.